**DUANE MORRIS LLP**
Jennifer A. Riley (SBN 360545)
JARiley@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, California 90017-5450
Telephone: +1 213 689 7400
Facsimile: +1 213 689 7401

**DUANE MORRIS LLP**
Justin R. Donoho (*pro hac vice*)
JRDonoho@duanemorris.com
Hayley H. Ryan (*pro hac vice*)
HHRyan@duanemorris.com
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Telephone: +1 312 499 6700
Fax: +1 312 499 6701

Attorneys for Defendant
WAYFAIR LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

JOSEPH LIMAS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WAYFAIR LLC, and DOES 1 to 20, inclusive,

Defendants.

Case No. 25-CV-11185-DMG

**DEFENDANT WAYFAIR LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

[Removed from Los Angeles Superior Court, Case No. 25STCV30609]

[Filed concurrently with Notice of Motion and Motion, Declaration of Hayley Ryan, Request for Judicial Notice, Proposed Order, and Rule 5.1 Notice]

Hearing Date: June 5, 2026

Time: 9:30 a.m.

Judge: District Judge Dolly M. Gee

# TABLE OF CONTENTS


Page(s)

**I. INTRODUCTION ..... 8**

**II. FACTUAL BACKGROUND ..... 9**

A. Plaintiff Accessed Social Media Companies' Services ..... 9

B. Plaintiff Searched Wayfair's Website And Social Media Companies' Pixels Embedded On Wayfair's Website Sent Plaintiff's Encrypted Website-Visit Data (None Identified) To Social Media Companies ..... 10

**III. LEGAL STANDARD ..... 11**

**IV. ARGUMENT ..... 11**

A. Plaintiff's CIPA § 631 Claim (Count I) Fails Because Wayfair Was A Party To The Alleged Communications, And Plaintiff Fails To Allege Knowing And Intentional Aiding And Abetting Of Social Media Companies' Intentional, Nonconsensual Interception Of The "Contents" Of The "Same" "In Transit" Communication ..... 11

1. Plaintiff Fails To Allege Facts Showing Interception Of Any Same, In Transit Communication ..... 12

2. Plaintiff Fails To Allege Any Identified "Contents" ..... 14

3. Plaintiff Fails To Allege Social Media Companies Willfully Intercepted Without Consent ..... 14

4. Plaintiff Does Not Allege Knowing And Intentional Aiding And Abetting ..... 15

B. Plaintiff's CIPA § 638.51 Claim (Count II) Fails Because Plaintiff Fails To Allege A "Trap and Trace Device" Or "Pen Register" ..... 15

1. Plaintiff Fails To Allege Any Impulses Identifying Sources Of Plaintiff's Incoming Communications Or Destinations Of Outgoing Communications ..... 16

2. Plaintiff Has Not Alleged Impulses "Reasonably Likely To Identify" Plaintiff ..... 19

3. Plaintiff Pleads The "Contents Of A Communication" ..... 21

4. Wayfair Is An Exempt "Electronic Communication Service" Provider ..... 23

C. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because Plaintiff's Statutory Interpretations Violate The Rule Of Lenity ..... 23

D. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because Plaintiff's Statutory Interpretations Violate The Canon Against Absurd Results ..... 24

E. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because If CIPA Were Triggered By Plaintiff's Complaint, Then CIPA Does Not Survive Scrutiny Under The First Amendment ..... 26

**V. CONCLUSION ..... 29**

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allen v. Novant Health, Inc.*
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......... 26

*In re Apple Data Priv. Litig.*
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 23

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 11

*B.K. v. Desert Care Network*
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) .......... 15

*B.K. v. Eisenhower Med. Ctr.*
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 12

*Bartnicki v. Vopper*
532 U.S. 514 (2001) .......... 27

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 11

*Briskin v. Shopify Inc.*
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 13-15

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 14

*Doe v. Eating Recovery Center, LLC*
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 24

*Eggleston v. Reward Zone USA LLC*
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) .......... 25

*Eichenberger v. ESPN, Inc.*
876 F.3d 979 (9th Cir. 2017) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) .......... 12

*Heiting v. Taro Pharms. USA, Inc.*
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 15

*Jackson v. Whitepages, Inc.*
2025 WL 2407201 (N.D. W. Va. Aug. 19, 2025) .......... 29

*Katz-Lacabe v. Oracle Am., Inc.*
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 26

*King v. Hard Rock Cafe Int'l (USA), Inc.*
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 14

*Kishnani v. Royal Caribbean Cruises Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 23

*L.B. v. LinkedIn Corp.*
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 13-14

*Leocal v. Ashcroft*
543 U.S. 1 (2004) .......... 24

*Lewis v. Magnite, Inc.*
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .......... 13

*Licea v. Cinmar, LLC*
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 13-14

*LVRC Holdings LLC v. Brekka*
581 F.3d 1127 (9th Cir. 2009) .......... 24

*Mastel v. Miniclip SA*
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 12-14

*McEwan v. OSP Grp., L.P.*
2015 WL 13374016 (S.D. Cal. July 2, 2015) .......... 24

*Mitchener v. CuriosityStream, Inc.*
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 22

*In Re Nickelodeon Consumer Privacy Litigation*
827 F.3d 262 (3d Cir. 2016) .......... 19-21

*In Re Nickelodeon*
2014 WL 3012873 (D.N.J. July 2, 2014) .......... 19

*Pena v. GameStop, Inc.*
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ............................................................ 12

*Popa v. Harriet Carter Gifts, Inc.*
2025 WL 896938 (W.D. Pa. Mar. 24, 2025)...................................................... 29

*Ramos v. Gap, Inc.*
2025 WL 2144837 (N.D. Cal. July 29, 2025) ..................................................... 25

*Rodriguez v. Google LLC*
2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................................... 26

*Shah v. MyFitnessPal, Inc.*
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ..................................................18-19

*Smith v. Facebook, Inc.*
262 F. Supp. 3d 943 (N.D. Cal. 2017).............................................................. 13

*Smith v. Facebook, Inc.*
745 F. App'x 8 (9th Cir. 2018)......................................................................... 14

*Smith v. YETI Coolers, LLC*
754 F. Supp. 3d 933 (N.D. Cal. 2024).............................................................. 15

*Solomon v. Flipps Media, Inc.*
136 F.4th 41 (2d Cir. 2025) ..........................................................................20-21

*T.D. v. Piedmont Healthcare, Inc.*
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)..................................................... 26

*Thompson v. W. States Med. Ctr.*
535 U.S. 357 (2002) ....................................................................................27, 29

*Tsering v. Meta Platforms, Inc.*
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ......................................................18-19

*U.S. v. Underhill*
813 F.2d 105 (6th Cir. 1987)............................................................................ 26

*Wiley v. Universal Music Grp., Inc.*
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ...............................................18-19

**California Cases**


*Aviles v. Liveramp, Inc.*
2025 WL 487196 (Cal. Sup. Ct. Jan. 28, 2025) ............................................17-18

*Barbour v. John Muir Health*
2023 WL 2618967 (Cal. Sup. Ct. Jan. 5, 2023) ............................................13-14

*Casillas v. BOP LLC*
2025 WL 2161288 (Cal. Super. June 18, 2025)............................................23, 25

*Casillas v. Calvin Klein, Inc.*
2025 WL 3529009 (Cal. Sup. Ct. Nov. 25, 2025)............................................22

*Casillas v. Transitions Optical, Inc.*
2024 WL 4873370 (Cal. Sup. Ct. Sept. 9, 2024) ............................................21, 23

*Heiting v. HP Inc.*
2025 WL 2993676 (Cal. Sup. Ct. Aug. 1, 2025)............................................17

*Levings, Jr. v. Open Text Corp.*
2024 WL 5672082 (Cal. Super. Ct. Sep. 03, 2024) ...............................21, 23, 25

*Licea v. Hickory Farms LLC*
2024 WL 1698147 (Cal. Sup. Ct. Mar. 13, 2024)............................................25

*Palacios v. Fandom, Inc.*
2024 WL 5494527 (Cal. Sup. Ct. Sept. 24, 2024) ............................................17-18

*Price v. Headspace, Inc.*
2025 WL 1237977 (Cal. Super. Apr. 1, 2025)............................................22

*Rodriguez v. Plivo Inc.*
2024 WL 5184413 (Cal. Sup. Oct. 2, 2024)............................................18, 21

*Rodriguez v. Sparc Group, LLC*
2025 WL 2993671 (Cal. Sup. Ct. Jul. 9, 2025)............................................17

*Sanchez v. Cars.com Inc.*
2025 WL 487194 (Cal. Sup. Ct., Jan. 27, 2025) ............................................21, 28


**Other State Cases**


*Vita v. New England Baptist Hosp.*
2024 WL 4558621 (Mass. Oct. 24, 2024)............................................24, 26

**Federal Statutes**

CIPA § 631(a) .......... 12, 14, 26, 29

CIPA § 637.2 .......... 24

CIPA § 638.50(b) .......... 18, 21, 23

CIPA § 638.50(c) .......... 16-17, 19

CIPA § 638.51 .......... 8-9, 15-23, 25, 28-29

CIPA § 638.51(b)(1) .......... 23

**State Statutes**

Cal. Civ. Code § 1798.150 .......... 28

## I. INTRODUCTION

Plaintiff Joseph Limas's ("Plaintiff") second attempt to challenge Defendant Wayfair LLC's ("Wayfair's") alleged use of popular website advertising technology fails. In his First Amended Complaint ("FAC"), Plaintiff repeats the same self-defeating and conclusory allegations he included in his original complaint. Plaintiff alleges that, because Plaintiff used TikTok, Facebook, Pinterest, Snapchat, Twitter, and Reddit (collectively, the "Social Media Companies") before he visited Wayfair's website, those companies' ad servers received anonymized, encrypted information about his visit to Wayfair's website and, as a result, adjusted the advertisements they sent Plaintiff. Plaintiff does not contend that Wayfair provided any information that an ordinary person could use to identify Plaintiff, publicly disclosed information regarding Plaintiff, or disclosed Plaintiff's information to any cybercriminal. Plaintiff's claims therefore fail as a matter of law. For each count, Plaintiff fails to plausibly plead one or more required elements, and his claims fail for multiple additional reasons.

Plaintiff's claim for alleged violation of the California Invasion of Privacy Act ("CIPA") § 631 (Count I) fails because Plaintiff bases such claim on alleged communications between Wayfair and Plaintiff. It is well settled that a party to a communication cannot be held directly liable under CIPA § 631. As to Plaintiff's aiding-and-abetting theory, Plaintiff must plead facts showing: (1) that Wayfair knowingly and intentionally aided and abetted Social Media Companies' (2) intentional, nonconsensual interception of (3) the "contents" of (4) a "same," "in transit" communication. Plaintiff has failed plead any such facts.

Plaintiff's claim for alleged violation of CIPA § 638.51 (Count II) fails because Plaintiff fails to plausibly allege that Wayfair utilized a "trap and trace device" or "pen register." First, such devices capture information reasonably likely to identify, respectively, the source of a plaintiff's incoming communications or the destination of his outgoing communications. Plaintiff alleges, instead, that Wayfair captured

information about *Plaintiff*. Second, even if § 638.51 prohibited Wayfair from capturing personally identifiable information ("PII") about Plaintiff, as opposed to information that identifies the sources and destinations of communications, which it does not, Plaintiff does not allege facts showing that Plaintiff transmitted PII. Third, Plaintiff's allegations show that the communications to which Plaintiff points fall within exemptions to § 638.51 because (1) Plaintiff alleges capture of the "contents" of communications, and (2) Plaintiff alleges that Wayfair is a website operator and, therefore, Wayfair falls within § 638.51's exemption for "electronic communication service" providers.

In the alternative, Counts I and II fail because Plaintiff's statutory interpretations violate the rule of lenity and canon against absurd results. Plaintiff purports to threaten unprecedented liability for widespread use of website advertising technology that Plaintiff does not allege causes any actual damages. Plaintiff cannot cite any legal authority suggesting that, when enacting CIPA, a criminal statute, the legislature intended such civil damages for popular, unharmful conduct. Moreover, if Plaintiff triggered CIPA, CIPA would fail First Amendment scrutiny because Plaintiff's interpretations, which prohibit the transmission of encrypted, inaccessible, anonymized web-browsing data, do not directly advance the asserted governmental interest in protecting privacy or preventing improper eavesdropping. Less restrictive means exist, including interpreting "trap and trace device," "pen register," and other statutory terms according to their statutory text, legislative history, and controlling case law. As a result, the Court should dismiss the First Amended Complaint with prejudice.

## II. FACTUAL BACKGROUND

### A. Plaintiff Accessed Social Media Companies' Services

Before visiting Wayfair's website, Plaintiff "accessed TikTok, Facebook, Pinterest, Snapchat, Twitter, and Reddit." (FAC ¶ 4.)

### B. Plaintiff Searched Wayfair's Website And Social Media Companies' Pixels Embedded On Wayfair's Website Sent Plaintiff's Encrypted Website-Visit Data (None Identified) To Social Media Companies

Plaintiff visited Wayfair's website "on the same devices and the same browser he accessed [Social Media Companies]." (FAC ¶ 4.) He claims he did so to search for furniture and home goods. (*Id.*)

According to Plaintiff, Wayfair embedded software code called "pixels" supplied by Social Media Companies on its website, which transmitted to Social Media Companies the following information about Plaintiff: (1) a URL of the Wayfair webpage(s) Plaintiff visited (*id*. ¶¶ 39, 93 n.64, 105, 148, 187); (2) the time of Plaintiff's visit (*id.* ¶ 41(a), 124(a)); (3) the button click(s) or other action(s) Plaintiff took during the visit (*id.* ¶¶ 41(e), 88, 124(d), 157); (4) an IP address (*id.* ¶¶ 41(b), 124(e), 162); (5) Plaintiff's device "model, operating system, and browser information" (collectively, "Device Information") (*id.* ¶¶ 41(c), 124(b)); and (6) Plaintiff's Social Media Company ID number(s) (*id.* ¶¶ 86-87, 105) (collectively, "Website-Visit Data").

Plaintiff does not identify any of this alleged information (1) through (6). He does not identify which URL(s) he allegedly visited, when, what button clicks or other actions he allegedly took on those webpage(s), any alleged IP address associated with his visit (or whether the IP address was associated with his device, a VPN server, a router, a gateway, or any other device), his alleged Device Information, or any alleged Social Media Company ID number(s). And Plaintiff does not allege that any ordinary person could obtain or decode any IP address, his Device Information, his Social Media Company ID numbers(s), or any other Website-Visit Data to identify Plaintiff.

Plaintiff concedes that, before sending Plaintiff's Website-Visit Data to the Social Media Companies' computer servers, the pixels encrypted the Website-Visit

Data via the secure "https" protocol. (FAC Figs. 44, 55, 7, 12, 15-19, 23, and 16-17 on p. 44.) He alleges that the Social Media Companies' algorithms then read and subsequently used the Website-Visit Data to adjust the advertising they sent Plaintiff so that it was "targeted" with respect to his Website-Visit Data. (*Id*. at p. 2 & ¶¶ 75, 82, 91, 120, 147, 164, 193.)

Plaintiff does not allege that any human has his encrypted Website-Visit Data or could retrieve it from the Social Media Companies' algorithms. Plaintiff does not even allege that the Social Media Companies, or any other entity or person, has his Website-Visit Data stored or that it could be retrieved in a decrypted (readable) format.

## III. LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must disregard legal conclusions. *Id*. at 678-79. Factual allegations must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If they are "merely consistent with" liability, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Plaintiff's CIPA § 631 Claim (Count I) Fails Because Wayfair Was A Party To The Alleged Communications, And Plaintiff Fails To Allege Knowing And Intentional Aiding And Abetting Of Social Media Companies' Intentional, Nonconsensual Interception Of The "Contents" Of The "Same" "In Transit" Communication

Plaintiff brings Count I under theories that Wayfair violated § 631 directly and by aiding and abetting Social Media Companies. (*See* FAC ¶¶ 209, 211.) Both claims fail as a matter of law because Plaintiff concedes that Wayfair was a party to

the alleged communication and because Plaintiff fails to allege facts showing a plausible violation of CIPA.

First, Plaintiff's direct-liability theory fails. It is well settled that a party to the communication cannot be liable under § 631. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (holding that the CIPA contains "an exemption from liability for a person who is a 'party' to the communication"); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) (dismissing CIPA claim "because Defendant was the known and intended recipient of the communications sent by Plaintiff . . . on Defendant's website"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024). Here, because Plaintiff alleges that Wayfair was a party to and intended recipient of Plaintiff's communications, Plaintiff cannot state a claim against Wayfair.

Second, Plaintiff's aiding-and-abetting theory fails. A plaintiff cannot maintain a claim for alleged aiding and abetting where he cannot allege an underlying violation of CIPA § 631. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (dismissing CIPA claim "because none of the alleged conduct that [defendant] allegedly 'agreed to' or 'aided' violated [CIPA] § 631(a)"). Here, for the reasons stated in Sections IV.A.1-3, below, Plaintiff's underlying theories against the Social Media Companies fail, and, therefore, Plaintiff cannot maintain an aiding and abetting claim against Wayfair. In addition, as explained in Section IV.A.4, Plaintiff fails to allege Wayfair's requisite scienter.

**1. Plaintiff Fails To Allege Facts Showing Interception Of Any Same, In Transit Communication**

Plaintiff fails to allege the interception of "the same" communication while it was "in transit." An interception of a communication occurs under CIPA only "while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." CIPA § 631(a).

In other words, to state a claim for violation of CIPA, a plaintiff must allege facts showing that "the same" communication was intercepted while "in transit"; a plaintiff does not state a claim under CIPA when he or she alleges that an entity acquired content through a second transmission. *Id.*; *Briskin v. Shopify Inc.*, 2026 WL 161441, at *7 (N.D. Cal. Jan. 21, 2026) (dismissing CIPA claim because allegations "that the relevant data is encrypted and sent to [a third party]'s servers, and only read/analyzed after it has been received by [the third party]" do not "adequately allege that the contents of the communications were read 'in transit'"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing CIPA claim "because Plaintiffs do not adequately allege that their conversations were intercepted in transit"); *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (same); *Mastel*, 549 F. Supp. 3d at 1137 (same); *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Sup. Ct. Jan. 5, 2023) (same).

Moreover, no interception can occur in transit where the data is either "encrypted" while it is in transit, *Briskin*, 2026 WL 161441, at *7 (dismissing § 631 claim because plaintiff alleged that "the relevant data is encrypted" while in transit), or when the purported reading or attempt to read contents occurs after the transmission. *Id.*; *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (dismissing § 631 claim because "Plaintiffs' allegations suggest that Defendant would analyze Plaintiffs' communications after it collects them, not as it collects them").

Plaintiff does not allege that the communication allegedly intercepted was the "same" one originally transmitted. Rather, Plaintiff concedes that the allegedly "intercept[ed]" communications were "duplicat[ed]" transmissions (FAC ¶ 185) containing "additional parameters" (*id.* ¶ 122). Consistent with these concessions about how pixels work, another court granted dismissal on the same ground. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) ("The website's decision to embed the code allows that connection to occur, but the connection

happens independently.”). Moreover, Plaintiff concedes that the purportedly intercepted communication was encrypted while in transit and read by Social Media Companies’ algorithms only after the alleged transmission. (*See* Section II.B, above.) These concessions and Plaintiff’s failure to allege interception of the “same” in-transit communication dooms Plaintiff’s § 631(a) claim. CIPA § 631(a); *Briskin*, 2026 WL 161441, at *7; *Licea*, 659 F.Supp. 3d at 1110; *L.B.*, 2025 WL 2899514, at *16; *Mastel*, 549 F. Supp. 3d at 1137; *Barbour*, 2023 WL 2618967, at *5.

**2. Plaintiff Fails To Allege Any Identified “Contents”**

Plaintiff fails to identify what “contents” of a communication, if any, allegedly were intercepted by Social Media Companies. This is fatal to his CIPA § 631(a) claim. *See, e.g., King v. Hard Rock Cafe Int’l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing § 631(a) claim because complaint was “devoid of any allegation describing [plaintiff’s] search queries, if any.”); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123, 1130 (S.D. Cal. 2023) (same).

**3. Plaintiff Fails To Allege Social Media Companies Willfully Intercepted Without Consent**

An interception occurs in violation of CIPA § 631 only if it was willful and without consent. (*See* FAC ¶ 206 quoting CIPA § 631(a) (requiring interception “willfully and without consent of all parties to the communication”).)

Plaintiff pleads no facts regarding Social Media Companies’ supposed intent. As far as Social Media Companies knew and intended, Plaintiff, having “accessed [Social Media Companies],” was notified of and consented to Social Media Companies receiving his encrypted data sent via pixels embedded on Wayfair’s website as part of Social Media Companies’ user agreements and advertising practices. (FAC ¶ 4; *Smith v. Facebook, Inc.*, 745 F. App’x 8, 9 (9th Cir. 2018) (affirming holding that Facebook users “consented to Facebook’s data tracking and collection practices” including “collection of health-related data” and “their browsing data from various healthcare-related websites”).

Plaintiff does not plead any facts to suggest that Social Media Companies thought they lacked Plaintiff's consent. These pleading failures doom Plaintiff's § 631 claim. *See B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (dismissing § 631 claim premised on aiding and abetting Facebook because plaintiff did "not allege that Meta knew or should have known that the data it received from Defendants was collected without users' consent"); *Briskin*, 2026 WL 161441, at * 5 (dismissing § 631 claim for failure to plead requisite scienter).

**4. Plaintiff Does Not Allege Knowing And Intentional Aiding And Abetting**

Plaintiff does not allege facts showing any knowing or intentional aiding and abetting. The requisite scienter for a CIPA § 631 claim premised on aiding and abetting is "know[ledge] or willful[ness]." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023); *see Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) ("§ 631(a)'s fourth clause . . . . requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts.").

Plaintiff has not alleged that Wayfair could have known or intended that any Social Media Companies willfully and without Plaintiff's consent intercepted the "contents" of a "same," "in transit" communication because Plaintiff has not pled facts to suggest that such interception occurred in the first place, let alone that Wayfair had knowledge or intent to aid and abet. (*See* Sections IV.A.1-3.) Plaintiff's conclusory allegations of scienter (*see* FAC ¶¶ 211-212) fall short of the requirements of § 631. *See Heiting*, 709 F. Supp. 3d at 1019 (dismissing aiding and abetting § 631 claim because the plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [the third-party advertising company]'s purported CIPA violation"); *Smith*, 754 F. Supp. 3d at 943 (same).

**B. Plaintiff's CIPA § 638.51 Claim (Count II) Fails Because Plaintiff Fails To Allege A "Trap and Trace Device" Or "Pen Register"**

Plaintiff's claim for alleged violation of CIPA § 638.51 (Count II) fails because he fails to allege facts showing Wayfair used a trap and trace device or pen register. "Trap and trace devices" and "pen registers" are tools that can be installed on telephone company equipment to record incoming and outgoing telephone numbers, respectively. (Ex. 1, 2015 CA A.B. 929, Committee Report (June 15, 2015).) Law enforcement officers use these tools to "identify" who called an individual (CIPA § 638.50(c) (defining "trap and trace device"), or to "decode" who the individual called (*id.* § 638.50(b) (defining "pen register").

Plaintiff has not alleged that the pixels supposedly installed on Wayfair's website are "trap and trace devices" or "pen registers" because: (1) Plaintiff alleges that the pixels identified or decoded *Plaintiff*, not any incoming or outgoing signals; (2) Plaintiff does not plausibly allege the transmission of impulses "reasonably likely to identify" Plaintiff; (3) Plaintiff concedes that he pleads the "contents of a communication"; (4) Plaintiff's statutory interpretations violate the rule of lenity; and (5) Plaintiff's interpretations violate the canon against absurd results.

**1. Plaintiff Fails To Allege Any Impulses Identifying Sources Of Plaintiff's Incoming Communications Or Destinations Of Outgoing Communications**

A "trap and trace device" captures "incoming" impulses. CIPA § 638.50(c). "Incoming" plainly refers to impulses incoming to the device of the person CIPA is intended to protect – here, Plaintiff. A "pen register," by contrast, captures outgoing impulses from a plaintiff – *i.e.*, signals "transmitted by an instrument or facility from which a wire or electronic communication is transmitted." *Id.* § 638.50(b).

The CIPA's legislative history confirms these interpretations. As it explains, trap and trace devices and pen registers are tools that: (a) allow law enforcement to track "incoming and outgoing" telephone calls to "people in an investigation"; and (b) "allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers" and "all outgoing numbers from a particular

telephone," both "in situations such as gang and narcotic investigations." (Ex. 1 at 8-9.)

Courts interpreting this language and legislative history agree that "incoming" refers to impulses directed toward a plaintiff's device. *See Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Sup. Ct. Sept. 24, 2024) (finding that "incoming" means "information directed toward Plaintiff's computer"); *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Sup. Ct. Jan. 28, 2025) (finding no "trap and trace device" alleged because plaintiff did not "alleg[e] that Defendant installed software on *Plaintiff's* device or browser that collected incoming contact information to *Plaintiff's* device") (emphasis in original); *Heiting v. HP Inc.*, 2025 WL 2993676, at *3 (Cal. Sup. Ct. Aug. 1, 2025) (rejecting argument that TikTok software is a "trap and trace device" because plaintiff did not allege "that Defendant's website puts any sort of wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff"); *Rodriguez v. Sparc Group, LLC*, 2025 WL 2993671, at *4 (Cal. Sup. Ct. Jul. 9, 2025) (rejecting argument that defendant used a "trap and trace device" because the information alleged was "about Plaintiff's device – not information about incoming communications to the device of Plaintiff, who is alleged to be the privacy victim").

Plaintiff does not allege any device or process that captures any impulses incoming to his own device. Thus, Plaintiff's § 638.51 claim fails because he does not allege a "trap and trace device." CIPA § 638.50(c); Ex. 1; *Palacios*, 2024 WL 5494527, at *3; *Aviles*, 2025 WL 487196, at *3; *Heiting v. HP Inc.*, 2025 WL 2993676, at *3; *Rodriguez*, 2025 WL 2993671, at *4.

Likewise, courts interpreting the definition of "pen registers" agree that the outgoing "signal[s]" from a plaintiff's device refers to the destination of the communication – here, Wayfair's website. *See Palacios*, 2024 WL 5494527, at *3 ("The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP

address."); *Aviles*, 2025 WL 487196, at *2 (finding that plaintiff failed to allege a pen register because plaintiff did not allege that the "software installed on users' devices by the Website []collects the outgoing addressing information from visitors' devices or browsers"); *Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Sup. Oct. 2, 2024) ("Plaintiff's IP address is not the type of information collected by pen registers. Pen registers collect outgoing information, such as outgoing telephone numbers, outgoing email addresses, IP addresses of websites visited.").

Courts have rejected pen register claims lacking allegations of outgoing "dialing, routing, addressing, or signaling" information. *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *6-7 (N.D. Cal. Jan. 12, 2026) (dismissing pen register claim where plaintiffs alleged that the software "collected users' geolocation data, 'unique device identifiers,' 'device fingerprint data,' and 'personal information," but did not allege "that this information is used for 'dialing, routing, addressing, or signaling'"); *see Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *8 (N.D. Cal. Jan. 27, 2026) (dismissing pen register claim and noting that plaintiffs failed to "identify not only their communications with [defendant] but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked"); *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17, 2025) (same).

Here, Plaintiff claims that pixels functioned as a "pen register" because they captured "signal[s]" allegedly identifying Plaintiff (*see* FAC ¶¶ 222 ("identify the source"), 224 ("identify users")), not because they allegedly captured signals identifying destinations of Plaintiff's communications as the statute requires. Moreover, Plaintiff does not identify his communications with Wayfair and does not allege that the Website-Visit Data was used for "dialing, routing, addressing, or signaling." Thus, Plaintiff also has failed to allege a "pen register" as required to state a claim under CIPA § 638.51. CIPA § 638.50(b); Ex. 1; *Palacios*, 2024 WL 5494527, at *3; *Aviles*, 2025 WL 487196, at *2-3; *Rodriguez*, 2024 WL 5184413, at

*4-5; *Tsering*, 2026 WL 89320, at *6-7; *Shah*, 2026 WL 216334, at *8; *Wiley*, 2025 WL 3654085, at *9.

### 2. Plaintiff Has Not Alleged Impulses "Reasonably Likely To Identify" Plaintiff

Plaintiff's CIPA § 638.51 claim fails because Plaintiff does not allege the transmission of impulses "reasonably likely to identify the source of" the communication. This pleading failure defeats both the "trap and trace" and "pen register" portions of Plaintiff's § 638.51 claim.

A "trap and trace device" captures only impulses "reasonably likely to identify the source of a wire or electronic communication." CIPA § 638.50(c). Plaintiff appears to interpret "reasonably likely to identify" as a likelihood of identifying *himself*. (FAC ¶ 222 ("signaling information of website visitors"); ¶ 224 ("identify users").) The "source" referenced in CIPA, however, refers to the source of data "incoming" to Plaintiff, and Plaintiff does not allege any such incoming sources. (*See* prior section.) Even assuming *arguendo* that the "source" refers to *Plaintiff*, Plaintiff does not allege that any Website-Visit Data allegedly transmitted from Plaintiff is reasonably likely to identify him.

In *In Re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016), a plaintiff alleged that a pixel embedded on a website transmitted her "IP address" and "browser fingerprint" in violation of the Video Privacy Protection Act ("VPPA"). *Id.* at 281-82. The trial court dismissed the claim, concluding that the VPPA's prohibition on disclosure of PII did not prohibit the disclosure of "anonymous information which may after investigation lead to identification," noting that the browser fingerprint "is not even anonymized information about the Plaintiff . . . it is anonymized information about a computer." *In Re Nickelodeon*, 2014 WL 3012873, at *10-13 (D.N.J. July 2, 2014). The Third Circuit affirmed, explaining that "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person," and that allegations of

downstream data aggregation by a website advertising technology ("adtech") company to "unmask the identity" of website users were "simply too hypothetical" to support liability under the VPPA. 827 F.3d at 283, 290.

Other appellate courts have reached the same conclusion regarding unique identifiers transmitted through adtech like the pixels at issue here. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 43-46, 54 (2d Cir. 2025) (affirming dismissal of adtech case, finding that a Facebook ID transmitted via the Meta Pixel does not constitute PII because the complaint failed to plausibly allege that an ordinary person could identify plaintiff); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (affirming dismissal of adtech case because a device serial number was insufficient for an ordinary person to identify an individual).

Here, the only allegation Plaintiff makes to support his argument that alleged impulses sent to Social Media Companies he accessed were "reasonably likely to identify" him are that Social Media Companies' algorithms could identify the impulses as originating from him. (FAC ¶ 175.) However, Plaintiff does not identify any allegedly PII associated with himself; the only Facebook ID that Plaintiff alleges belongs to a test account created by Plaintiff's counsel. (*Id.* ¶ 87 & Figs. 13-14.) Moreover, even if Plaintiff had identified any allegedly personally identifying impulses, Plaintiff does not plausibly allege that any ordinary person could access the impulses and, moreover, identify them as coming from Plaintiff.

In short, Plaintiff has not alleged the transmission of any data "reasonably likely to identify" him. CIPA § 638.51. Instead, he has alleged the transmission of Website-Visit Data that he does not plausibly allege is reasonably likely to identify him. *See, e.g., In re Nickelodeon*, 827 F.3d at 283, 288, 290; *Solomon*, 136 F.4th at 43-46, 54. And even if Plaintiff had alleged the transmission of data reasonably likely to identify him, Plaintiff fails to allege that anyone could access the data by cracking the "https" encryption (FAC Figs. 44, 55, 7, 12, 15-19, 23, and 16-17 on p. 44) and/or retrieving the data from Social Media Companies' algorithms.

California courts facing § 638.51 trap and trace claims arising out of adtech and raising similar allegations to Plaintiff's Website-Visit Data have dismissed them, as this Court should here. *See Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *3 (Cal. Sup. Ct. Sept. 9, 2024) (dismissing § 638.51 trap and trace claim alleging capture of "digital fingerprint[]" and "IP address" because plaintiff's complaint contains only "vague hints about the possibility that highly sensitive personal information may be accessed"); *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *2-3 (Cal. Sup. Ct., Jan. 27, 2025) (dismissing trap and trace claim alleging capture of "the user's IP address" . . . with very few specific allegations pertaining to Plaintiff"); *Rodriguez*, 2024 WL 5184413, at *1 (dismissing trap and trace claim alleging capture of "digital[] fingerprint" and "IP address"); *Levings, Jr. v. Open Text Corp.*, 2024 WL 5672082, at *5 (Cal. Super. Ct. Sep. 03, 2024) (same).

Plaintiff's failure to plausibly allege impulses reasonably likely to identify him also supplies an additional basis to dismiss the "pen register" portion of Plaintiff's § 638.51 claim. Even assuming *arguendo* that the "dialing, routing, addressing, or signaling information" referenced in § 638.50(b) refers to PII as opposed to destinations of Plaintiff's communications, Plaintiff does not plausibly allege a pen register because Plaintiff does not identify any PII. The only Facebook ID he alleges belongs to a test account created by Plaintiff's counsel. (FAC ¶ 87 & Figs. 13-14.)

Moreover, the Website-Visit Data, being not reasonably likely to identify Plaintiff, *see, e.g.*, *In re Nickelodeon*, 827 F.3d at 283, 288, 290; *Solomon*, 136 F.4th at 43-46, 54), is therefore insufficient to support a pen register claim under CIPA § 638.51. *Levings*, 2024 WL 5672082, at *5 (dismissing § 638.51 pen register claim because plaintiff had no "reasonable expectation of privacy" in IP address and unidentified "digital fingerprinting" information); *Casillas*, 2024 WL 4873370, at *5 (same); *Sanchez*, 2025 WL 487194, at *5 (same).

**3. Plaintiff Pleads The "Contents Of A Communication"**

Plaintiff's § 638.51 claim fails because he pleads the "contents of a communication." Under CIPA, "trap and trace devices" and "pen registers" record and capture information, "but not the contents of a communication." §§ 638.51(b), (c).

In *Price v. Headspace, Inc.*, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025), for example, the plaintiff alleged that a mental health company's use of adtech on its website constituted an unlawful "pen register" and "trap and trace" device in violation of § 638.51. *Id.* at *1. The plaintiff alleged that the embedded adtech "collects information . . . to create 'a collection of user behavior'" and that "impulses are sent to [the third-party adtech provider] to collect a visitor's behavior for targeted advertising." *Id.* at *3. The company argued the claim failed because the plaintiff alleged the capture of "the contents of a communication." *Id.* at *2. The court agreed, explaining "that both 'pen registers' and 'trap and trace devices' are designed to capture information <u>about the communication</u>, but <u>not the content of the communication</u> itself. . . . by definition [they] are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'" *Id.* at *3 (emphasis in original). The court therefore dismissed the complaint, finding no allegations of a "pen register" or "trap and trace device." *Id.*

Here, Plaintiff alleges the capture of "[t]he contents of Plaintiff's communications." (FAC ¶ 184.) For example, Plaintiff alleges the capture of information pertaining to URLs visited and actions on the website taken by Plaintiff. (*See* Section II.B, above.) Such allegedly captured information are "contents," according to Plaintiff. (FAC ¶¶ 144, 184.) Under *Price*, this conceded transmission of "the contents of the communication" under § 638.51 warrants dismissal. 2025 WL 1237977, at *3. Other decisions also support dismissal on this basis. *See Casillas v. Calvin Klein, Inc.*, 2025 WL 3529009, at *1 (Cal. Sup. Ct. Nov. 25, 2025) (dismissing § 638.51 claim alleging capture of "the substance of the communications"); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6,

2025) (dismissing § 638.51 claim because "[i]f Defendant instead collects content information from communication between the parties…then the [adtech] software is not a trap and trace device and § 638.50 does not apply") (emphasis in original); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same); *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5, 7 (N.D. Cal. Jan. 20, 2026) (dismissing complaint, finding that plaintiffs simultaneously pleaded sufficient "contents" to defeat § 638.51 claim and insufficient "contents" to allege § 632 claim).

**4. Wayfair Is An Exempt "Electronic Communication Service" Provider**

Under CIPA § 638.51(b)(1), "a provider of electronic or wire communication service may use a pen register or a trap and trace device….[t]o operate, maintain, and test a wire or electronic communication service." Moreover, a "pen register," in the first place, "does not include a 'process used by a provider or customer of [an] … electronic communication service for … communications services provided by such provider … or other similar services in the ordinary course of business.'" *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025) (quoting CIPA § 638.50(b)). Wayfair allegedly operates its website. (FAC ¶ 5.) Therefore, it is an "electronic communication service" because "[t]he broad definition of 'electronic communications' reasonably indicates that an electronic communications service provider includes website operators." *Transitions Optical*, 2024 WL 4873370, at *4-5 & n.2. These circumstances also warrant dismissal of Plaintiff's § 638.51 claim. *See id.*; *Levings, Jr.*, 2024 WL 5672082, at *4 & n.2; *Casillas*, 2025 WL 2161288, at *2.

**C. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because Plaintiff's Statutory Interpretations Violate The Rule Of Lenity**

Plaintiff's claims fail because Plaintiff's statutory interpretations would violate the rule of lenity. CIPA defines criminal offenses punishable by incarceration. §§

631, 638.51. Those criminal offenses turn on the same terms "the same," "in transit," "incoming," "contents," "reasonably likely to identify the source," "dialing, routing, addressing, or signaling information," and "electronic or wire communication service," above. The rule of lenity requires that any ambiguities in these terms be resolved in favor of Wayfair. *See McEwan v. OSP Grp., L.P.*, 2015 WL 13374016, at *4 (S.D. Cal. July 2, 2015) (dismissing CIPA claim by "[a]pplying the rule of lenity" to construe "telephone" in a way "most favorable to [defendant]"); *Doe v. Eating Recovery Center, LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (disposing of a pixel-based CIPA claim on the grounds of the rule of lenity, stating, "the language of CIPA is a total mess ... courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation"); *Vita v. New England Baptist Hosp.*, 2024 WL 4558621 (Mass. Oct. 24, 2024) (ordering dismissal of pixel case brought under Massachusetts wiretap act because rule of lenity applies); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (finding that any "ambiguity" in a criminal statute "should be resolved in favor of lenity" where case was brought under statute in "a civil context"); *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.").

### D. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because Plaintiff's Statutory Interpretations Violate The Canon Against Absurd Results

Plaintiff's interpretations of the statutory terms "the same," "in transit," "incoming," "contents," "reasonably likely to identify the source," "dialing, routing, addressing, or signaling information," and "electronic or wire communication service," and other terms under CIPA, threaten liability on an unprecedented, mammoth scale. Hypothetically, if only 100,000 California Social Media Company users visited Wayfair's website during the relevant period, potential statutory liability for Wayfair under Plaintiff's theory would total at least $500 million. *See* CIPA §

637.2 (setting forth statutory civil damages of $5,000 per violation); FAC Prayer ¶ b. Moreover, millions of companies and governmental organizations use website advertising technologies.[1] Any final judgment accepting Plaintiff's interpretations would invite waves of high-stakes CIPA claims against companies spanning every industry beyond the hundreds being filed by other law firms. "In the last 18 months, trial lawyers have sued over 1,500 businesses using the California Invasion of Privacy Act's private right of action." (*See* Ex. 2, California Senate Bill 690, Report to the Committee on Public Safety at 10 (April 29, 2025) (report on bill to halt CIPA adtech lawsuits).

Plaintiff does not cite any legal authority suggesting such results are what the California legislature intended when enacting the CIPA. In addition, such results would be absurd. Dismissal is warranted on this basis of absurdity. *See Ramos v. Gap, Inc.*, 2025 WL 2144837, at *9 (N.D. Cal. July 29, 2025) (dismissing § 631 claim "given the expansive implications of Plaintiff's theory"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Ct. Mar. 13, 2024) (dismissing § 638.51 claim because "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce"); *Casillas*, 2025 WL 2161288, at *2 (dismissing § 638.51 claim because plaintiff's interpretation would "criminalize the process by which all websites communicate with all users who choose to access them"); *Levings*, 2024 WL 5672082, at *4 (same); *Eggleston v. Reward Zone USA LLC*, 2022 WL

[1] As Plaintiff alleges, "Pixel implementation is ... industry-wide." (*Id.* ¶ 45 n.35.) *See, e.g.*, BuiltWith, "Google Analytics Usage Statistics," https://trends.builtwith.com/analytics/Google-Analytics (reporting over 14.1 million live U.S. websites using Google Analytics); *id.*, "Facebook Conversion Tracking Usage Statistics, https://trends.builtwith.com/analytics/Facebook-Conversion-Tracking (reporting over 2 million live U.S. websites using the Meta Pixel); Customer Data Platform Institute, "Trackers and Pixels Feeding Data Broker Stores," https://www.cdpinstitute.org/news/trackers-and-pixels-feeding-data-broker-data-stores/ (reporting "47% of websites using Meta Pixel, including 55% of S&P 500, 58% of retail, 42% of financial, and 33% of healthcare") (last visited Feb. 23, 2026).

886094, at *5 (C.D. Cal. Jan. 28, 2022) (interpreting statute to avoid "absurd results"); *U.S. v. Underhill*, 813 F.2d 105, 112 (6th Cir. 1987) (interpreting federal wiretap act to avoid absurd result).

Avoiding such absurdities in pixel lawsuits has additional precedent. Most courts outside California addressing pixel claims brought under other wiretap acts have dismissed such claims on the pleadings. For example, so far, the only appellate court that decided whether a company's use of a pixel violates any wiretap statute providing for large statutory damages similar in scale to those provided by CIPA found that it does not. *Vita*, 2024 WL 4558621 (finding no violation of Massachusetts' wiretap act).

In addition, most courts deciding whether use of a pixel violates the federal wiretap statute find that it does not. *See, e.g.*, *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing pixel claim brought under the federal wiretap act, stating, "the weight of persuasive authority in similar pixel tracking cases supports [defendant]'s position"); *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (dismissing pixel claim brought under federal wiretap act); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (same).

**E. Alternatively, Plaintiff's Claims (Counts I and II) Fail Because If CIPA Were Triggered By Plaintiff's Complaint, Then CIPA Does Not Survive Scrutiny Under The First Amendment**

If Plaintiff had alleged the interception of the "contents" of a "same," "in transit" communication (§ 631(a)) or incoming or outgoing impulses "reasonably likely to identify the source" "but not the contents of a communication" (§ 638.50(b), (c)) with respect to the Pixels' transmission of Website-Visit Data, by a non-"electronic communication service provider" (he did not, *see* Sections IV.A-B), then any provision of CIPA allowing for such an interpretation would be an

unconstitutional regulation of commercial speech that does not survive First Amendment scrutiny. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category.").

Plaintiff alleges that the transmissions at issue were part of Wayfair's "business arrangement[s]" (FAC ¶¶ 55, 100, 117, 139, 154, 171) – *i.e.*, commercial. Plaintiff does not allege that the transmissions were otherwise "unlawful activity" or "misleading"; thus, the Court must ask: (1) "whether the asserted governmental interest is substantial"; (2) "whether the regulation directly advances the governmental interest asserted; and (3) "whether it is not more extensive than is necessary to serve that interest." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). All three inquiries must be answered in the affirmative for the statute to be found constitutional. *Id.* Wayfair submits that the last two inquiries fail, if CIPA were interpreted to prohibit the events alleged in the FAC.

First, Plaintiff alleges that the "asserted governmental interest," *Thompson*, 535 U.S. at 367, of CIPA is to protect privacy from being invaded by improper eavesdropping. (FAC pp. 2-3 & ¶¶ 6, 8.) Wayfair does not dispute that this interest is substantial.

Second, any provision of CIPA allowing for an interpretation that prohibits the alleged transmission of Website-Visit Data does not directly advance the governmental interest asserted, because: (a) the Website-Visit Data is not plausibly alleged to have been intercepted while "in transit"; (b) the alleged transmission is not alleged as known by Social Media Companies and Wayfair to be without Plaintiff's consent; (c) the Website-Visit Data is alleged to have been shared willingly by Plaintiff to a public internet site, not received as incoming data by Plaintiff; (d) the Website-Visit Data is not alleged to be reasonably likely to identify the sources of communications to Plaintiff or the destinations of communications from Plaintiff; (e) the Website-Visit Data is not alleged to be reasonably likely to identify Plaintiff; (f)

the "contents" portion of the Website-Visit Data is the fact of a visit to Wayfair's website; (g) the transmission of the Website-Visit Data to Social Media Companies is encrypted; and (h) the Website-Visit Data is not alleged to be retrievable from Social Media Companies' algorithms once transmitted.

Third, any provision of CIPA allowing for an interpretation that prohibits transmission of the Website-Visit Data under the circumstances (a) through (h), above, is much more extensive than necessary to serve the interest of protecting privacy from improper eavesdropping. That interest could be served by much less extensive provisions limiting liability under § 631 to knowingly aiding and abetting the intentionally nonconsensual interception of a plaintiff's communication while in transit and limiting liability under § 638.51 to using a device or process to capture impulses that an ordinary person could access and use to identify those who send and receive communications with a plaintiff.

Moreover, the interest could be served by applying the much less extensive provisions of the California Consumer Privacy Act ("CCPA") while finding the CIPA not applicable to internet communications at all. *See Sanchez*, 2025 WL 487194, at *3 ("[T]he legislative history of the CIPA suggests that 'track and trace devices' refer to devices or processes that are used to record or decode . . . information from telephone numbers, and not internet communications such as websites."); CCPA, Cal. Civ. Code § 1798.150 (providing for recovery of between $100 and $750 by "[a]ny consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure").

Further, the interest of protecting privacy from improper eavesdropping is not directly advanced by requiring a "court order," § 638.51(a), to authorize transmission of Website-Visit Data under the circumstances (a) through (h), above. The interest could be served by a less restrictive exception triggered by the web user's consent, as opposed to a court order. Such an exception would be triggered here. Specifically, if Plaintiff had visited Wayfair's website, then he would have consented via an online

privacy policy covering the Website-Visit Data located in the "Privacy Policy" link at the bottom of the screen, in line with common usage, and reasonably conspicuous with contrasting font, stating: "We disclose personal information to the following categories of recipients: … Advertising partners, including for the interest-based advertising purposes described above." *See Popa v. Harriet Carter Gifts, Inc.*, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) (dismissing adtech class action upon finding agreement to privacy policy at bottom of screen, in line with common usage, and reasonably conspicuous with contrasting font).

For the foregoing reasons, any portion of CIPA §§ 631(a) & 638.51 allowing for an interpretation that the events alleged in the FAC violate those provisions is unconstitutional. *See, e.g., Thompson*, 535 U.S. at 377 (finding speech-related provisions unconstitutional under the intermediate scrutiny test for commercial speech); *Jackson v. Whitepages, Inc.*, 2025 WL 2407201, at *20 (N.D. W. Va. Aug. 19, 2025) (granting motion to dismiss because privacy statute found unconstitutional).

## V. CONCLUSION

For the foregoing reasons, Wayfair respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety with prejudice.

Dated: February 23, 2026

Respectfully Submitted,

**DUANE MORRIS LLP**

By: */s/ Jennifer A. Riley*
Jennifer A. Riley

Attorneys for Defendant Wayfair LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Wayfair LLC, certifies that this brief contains 6,981 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 23, 2026

/s/ *Jennifer A. Riley*
Jennifer A. Riley