Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Matthew R. Snyder (350907)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff and all others similarly situated*

**UNTIED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JOSEPH LIMAS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WAYFAIR LLC,

Defendant.

Case No. 2:25-CV-11185-DMG-E

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: June 5, 2026
Time: 9:30 a.m.
Judge: Hon. Dolly M. Gee

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. STATEMENT OF FACTS ........................................................................................1

III. LEGAL STANDARD...............................................................................................3

IV. ARGUMENT ..........................................................................................................4

A. Plaintiff's claims under Penal Code § 638.51 are adequately pled...................................4

1. A plain language analysis of § 638.51 demonstrates that Plaintiff has adequately plead the use of a trap and trace device.........................................4

2. The Tracking Tools do not collect the contents of a communication..............................................................................7

3. Defendant's claimed exemption clearly does not apply. .......................................9

B. Plaintiff's claims under Penal Code § 631 are plead in the alternative to her claims under Penal Code § 638.51.............................................................10

1. The Tracking Tools intercept communications while they are in transit because they immediately intercept communications in real time. ..........................................................................10

2. Plaintiff alleges that the contents of communications were captured.............................................................................11

3. Plaintiff sufficiently alleges that the Tracking Entities' conduct was intentional. ..........................................................................11

4. Defendant aided the Tracking Entities in the above-described violations of Section 631. ......................................................12

C. Defendant's First Amendment challenge is meritless. ..................................................14

D. The rule of lenity does not apply. ................................................................17

V. Conclusion ..........................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F.Supp.3d 1274 (C.D. Cal. 2024) ........ 12
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4
*B.K. v. Desert Care Network*,
No. , 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ........ 14
*Barr v. American Association of Political Consultants, Inc.*,
591 U.S. 610 (2020) ........ 17
*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) ........ 3
*Board of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) ........ 20
*Borden v. U.S.*,
593 U.S. 420 (2021) ........ 13
*Bradshaw v. Lowe's Companies, Inc.*,
No. 25cv0742, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 7
*Cal. Emp. Stabilization Comm. v. Payne*
(1947) 31 Cal.2d 210 ........ 8
*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) ........ 12
*Carreiro v. EHM Productions, Inc.*,
No. 24STCV12462 (Cal. Super. Ct. L.A. Cty. Dec. 11, 2024) ........ 9
*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n. of N.Y.*,
447 U.S. 557 (1980) ........ 19
Clark v. Community for Creative Non–Violence,
468 U.S. 288 104 S.Ct. 3065 L.Ed.2d 221 (1984) ........ 18
*Clark v. State Farm Mut. Auto. Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005) ........ 16
*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
874 F.3d 597 (9th Cir. 2017) ........ 19

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) .......... 19

*Deivaprakash v. Conde Nast Digital*,
798 F.Supp.3d 1100 (N.D. Cal. 2025) .......... 8, 21

*Doe v. Call-On DOC, Inc.*,
No. 24CV2095, 2025 WL 1677632, at *12–15 (S.D. Cal. June 13, 2025) .......... 16

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025) .......... 14

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) .......... 4

*Earth Island Institute v. United States Forest Service*,
87 F.4th 1054 (9th Cir. 2023) .......... 3

*Esparza v. Kohl's*,
723 F.Supp.3d 934 (S.D. Cal. 2024) .......... 12

*Fiol v. Doellstedt*,
50 Cal.App.4th 1318 (1996) .......... 15

*Fla. Bar v. Went For It*,
515 U.S. 618 (1995) .......... 21

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 10

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023) .......... 6

*Heiting v. IHOP Restaurants, LLC*,
No. 24STCV14453 (Cal. Super. Ct. L.A. Cty. Oct. 28, 2024) .......... 9

*Hersh v. United* States,
553 F.3d 743 (5th Cir. 2008) .......... 18

*Huff v. Silson Sporting Goods Co.*,
No. 24STCV13922 (Cal. Super. Ct. L.A. Cty. Dec. 17, 2024) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
953 F.3d 589 (9th Cir. 2020) .......... 5

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. Dec. 2022) .......... 12

*In re Metal Pixel Tax Filing Cases*,
2025 WL 2243615 (N.D. Cal. Aug. 5, 2025) .......... 10

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .... 12

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1108 (9th Cir. 2014) .... 8, 9, 13

*India Price v. Carnival Corp.*,
712 F.Supp.3d 1347 (S.D. Cal. 2024).... 12

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. 2023) .... 13, 14

*Jurdi v. MSC Cruises (USA) LLC*, No. 24STCV14098, (Cal. Super. Ct. L.A. Cty. Sept. 17, 2024).... 9

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025).... 9

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .... 12

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004).... 5

*Lesh v. Cables News Network, Inc.*,
No. 24 Civ. 03132, 2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .... 5, 7

*Lungren v. Deukmejian*
(1988) 45 Cal.3d 727 .... 4

*M.H. v. Done Global Inc.*,
No. , 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) .... 15

*Meza v. Portfolio Recovery Assocs., LLC*
(2019) 6 Cal.5th 844 .... 4

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .... 7, 8

*Moser v. F.C.C.*,
46 F.3d 970 (9th Cir. 1995) .... 17

*Munn v. Illinois*,
94 U.S. 113 (1876).... 18

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998).... 18

*People v. Avery*
(2002) 27 Cal. 4th 49 ........ 21
*People v. Braden*
(2023) 14 Cal. 5th 791 ........ 21
*People v. Davies*,
No. F080824, 2022 WL 366859, at *10 (Cal. App. Feb. 8, 2022) ........ 14
*People v. Jenkins*
(1995) 10 Cal.4th 234 ........ 4
*People v. Williams*,
26 Cal.4th 779 (2001) ........ 13
*Price v. Entravision Commc'ns Corp.*,
No. 24SMCV02630 (Cal. Super Ct. L.A. Cty. Nov. 21, 2024) ........ 10
*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609, 2025 WL 948060, at *9 (Mar. 28, 2025) ........ 15
*Retail Digital Network, LLC v. Prieto*,
861 F.3d 839 (9th Cir. 2017) ........ 20
*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Cal. App. 1975) ........ 19
*Tavernetti v. Superior Ct.*,
22 Cal.3d 187 (1978) ........ 11
*U.S. v. Gomez*,
165 F.4th 1199 (9th Cir. 2026) ........ 13
*U.S. v. Jones*,
565 U.S. 400, 415 ........ 20
*Wilcox v. Birtwhistle*
(1999) 21 Cal.4th 973 ........ 4
*Wright v. TrueCare Property Holdings, LLC*,
No. 25-cv-00786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 6
*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 5

**Statutes**

Cal. Penal C. § 629.51 ........ 6

Cal. Penal C. § 631 .......... 11, 15
Cal. Penal C. § 631(a) .......... 11, 15

**Other Authorities**

S.B. 690, 2025 S., Reg. Sess. (Cal. 2025) .......... 8

**Rules**

Fed R. Civ. P. 12(b)(6) .......... 3
Fed. R. Civ. P. 8 .......... 3
Fed. R. Civ. P. 9 .......... 16
Fed. R. Civ. P. 9(b) .......... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant seeks dismissal of Plaintiff's consumer privacy claims based on a scattershot of arguments that are wholly unsupported by the plain language of the California Invasion of Privacy Act ("CIPA"). The tracking tools used by Defendant collect different types of data, including (i) identifiers such as IP address and device identifiers, and (ii) the contents of communications via detailed URLS. The providers of the tracking tools then use that data to track and analyze a user's browsing activity for commercial benefit. Numerous courts have held that nothing more is required for software to qualify as a trap and trace device. Defendant used this software without Plaintiff's consent, and without the consent of the putative class members. That is plainly a violation of CIPA. The clarity of CIPA's plain language explains why nearly a dozen federal courts have adopted Plaintiff's interpretation of the law, <u>just in the last several months</u>. This deluge of case law in support of Plaintiff's interpretation led one federal judge recently to state that the case law "uniformly" supports the conclusion that tracking software like that at issue here is a trap and trace device. Defendant's Motion to Dismiss (the "MTD" or the "Motion") simply invites the Court to ignore CIPA's plain language and commit legal error. It should not do so.

Nor does Defendant's First Amendment challenge to CIPA have any merit. CIPA is a content-neutral restriction on commercial speech that is intended to protect consumer privacy. The Ninth Circuit has held that similar content-neutral privacy statutes easily survive First Amendment scrutiny. There is no reason CIPA is any different. Even still, Defendant's First Amendment argument borders on nonsensical. It essentially argues that CIPA is unconstitutional as applied in this case because Plaintiff has not plead actions that violate CIPA. This argument simply makes no sense and is belied by the allegations in the Amended Complaint. CIPA is constitutional. The Motion should be denied.

## II. STATEMENT OF FACTS

Defendant Wayfair LLC ("Defendant") maintains and operates the online financial services website www.wayfair.com (the "Website"), which offers furniture, home décor, appliances, and other home goods for sale to consumers across the United States. Pl.'s First

Am. Compl. [ECF No. 22] ("FAC") at ¶ 5. Plaintiff Joseph Limas is a resident and citizen of California. FAC ¶ 4. Plaintiff used Defendant's Website for its intended purpose of browsing home goods. FAC ¶ 4. Plaintiff accessed the Website using the same devices and the same browser he used to access TikTok, Reddit, Facebook, and Pinterest. FAC ¶ 4.

Defendant installed and used multiple tracking pixels on the Website (the "Tracking Tools"), including tracking software developed by TikTok, Facebook, Reddit, and Pinterest (the "Tracking Entities"). FAC ¶¶ 31, 36, 89–90, 101, 118, 148, 155. Among these Tracking Tools is a tracking pixel created by TikTok and installed on the Website to track Website visitors' actions, behavior, and conversions (the "TikTok Pixel"). FAC ¶¶ 38–40, 48, 56. The Complaint pleads the TikTok Pixel in detail as one example of the Tracking Tools installed on the Website, while alleging that Defendant used multiple Tracking Tools developed by other Tracking Entities to collect and transmit user information through the Website. FAC ¶¶ 35, 36, 89–90, 101, 118, 148, 155. The TikTok Pixel is "a snippet of code that begins to collect information the moment a user lands on the Website." FAC ¶ 36. The TikTok Pixel shares information when users take actions on the Website, based on events configured by Defendant, including viewing products, adding items to a cart, and making purchases. FAC ¶ 39.

The TikTok Pixel obtains information communicated between a user's web browser and Defendant's servers. FAC ¶¶ 41, 67–70. The information collected includes IP address, device information, browser information, cookies, metadata, button clicks, and other dialing, routing, addressing, and signaling information associated with a user's electronic communications with the Website. FAC ¶¶ 67–68. The Complaint alleges that the TikTok Pixel employs several processes to identify users of Defendant's Website, generally known as "fingerprinting." FAC ¶ 59. One process involves the use of third-party cookies associated with TikTok that are detected and re-loaded when a user accesses the Website. FAC ¶¶ 60–66. Through this process, TikTok is able to link otherwise anonymous internet users to their personal TikTok accounts. FAC ¶ 65.

The Complaint further alleges that the TikTok Pixel collects metadata communicated through HTTP headers, including IP address, device user-agent strings, device make, device model, operating system type, browser type, and unique browser identifiers. FAC

¶¶ 67–70. The Complaint alleges that this metadata is compared to a database maintained by TikTok to identify users and track them across multiple webpages, and that these identification processes occur instantaneously upon connecting to the Website, before any privacy policy or cookie banner is presented to the user. FAC ¶¶ 73. In conjunction with this identification process, the TikTok Software is alleged to track the user's interactions on the Website, including the pages visited, buttons clicked, products selected and purchased, and advertisements clicked, and to catalog and store this information to maintain a record of the user's Website behavior. FAC ¶¶ 71–75.

The FAC alleges that the Tracking Tools operated within users' browsers, and intercepted data after being submitted by users (by clicks, etc) and before "reaching any destination . . . ." FAC ¶185. The information collected was transmitted to the Tracking Entities in conjunction with Plaintiff's browsing history, allowing the Tracking Entities to identify Plaintiff and associate his Website communications and activity with him. FAC at pg. 3. As alleged, Plaintiff's personal information was shared with TikTok and other Tracking Entities as a result of Defendant's implementation of the Tracking Tools on the Website. FAC ¶ 4. Plaintiff alleges that Defendant did not obtain his express or implied consent for the Tracking Tools to collect, identify, and transmit her information to TikTok or other Tracking Entities and did not obtain a court order authorizing the installation or use of the Tracking Tools to capture communications between Plaintiff and the Website. FAC ¶¶ 176, 178, 189, 191, 209, 223–224.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a Plaintiff only plead facts sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8's pleading standard is 'liberal.'" *Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023). "When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences drawn from them—as true and must construe them in the light most favorable to the non-moving party." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1078 (C.D. Cal. 2021) (citing *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)). A motion to dismiss under Rule 12(b)(6)

should only be granted if the complaint does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When interpreting a statute "the words of the statute are the starting point." *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978. "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature." *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735. When the language of a statute is not clear and requires construction, courts "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." *People v. Jenkins* (1995) 10 Cal.4th 234, 246.

## IV. ARGUMENT

### A. Plaintiff's claims under Penal Code § 638.51 are adequately pled.

#### 1. A plain language analysis of § 638.51 demonstrates that Plaintiff has adequately plead the use of a trap and trace device.

"When [courts] interpret a statute, [their] fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Courts] must first examine the statutory language, giving it a plain and commonsense meaning. [Courts] do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." *Meza v. Portfolio Recovery Assocs., LLC* (2019) 6 Cal.5th 844, 856 (quotation modified). "[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

"Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication. Cal. Penal C. § 638.50. "Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such

requirement." *Moody v. C2 Educational Sys. Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024). The "expansive language" included in CIPA's definition of trap and trace devices indicates that the Legislature intended broader coverage than just to telephone lines. *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023). "Today, pen registers [and trap and trace devices] take the form of software," and under the plain language of the statute, all that is required is that it "records or decodes dialing, routing, addressing, or signaling information." *Id.*; *Lesh v. Cables News Network, Inc.*, No. 24 Civ. 03132, 2025 WL 563358, at *3 (S.D.N.Y. Feb. 20, 2025) (applying California law); *see also In re Facebook, Inc. Internet Tracking Litig.*, 953 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion . . .").

"[S]oftware that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" constitutes a trap and trace device under CIPA. *Zarif v. Hwareh.com, Inc.*, 789 F.Supp.3d 880, 898 (S.D. Cal. 2025); *Wright v. TrueCare Property Holdings, LLC*, No. 25-cv-00786, 2025 WL 3248749, at *4–5 (S.D. Cal. Nov. 21, 2025). The allegations are simple. The Defendant's Website is an "electronic or wire communication service."[1] Defendant by virtue thereof is a "provider" of "services."[2]

---

[1] These terms are defined by Cal. Penal C. § 629.51. The definition of electronic communication is particularly broad, and defined as follows: "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." *Id.* at § 629.51(b). The data alleged by Plaintiff to have been intercepted and shared via the Pixel clearly involves "writings" "data" and "intelligence" "of **any** nature in whole or in part." The transmission of such data axiomatically by virtue of occurring through the Internet involved some or all of the following: "wire, radio, electromagnetic, photoelectric, or photo-optical system." Transmission of data through websites on the Internet has been held by many courts to qualify as an electronic or wire communication service. *See, e.g., Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023); *Moody v. C2 Educational Sys. Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024).

[2] Defendant cannot be both a "user" and a "provider." The user is using the services of the provider. Moreover, the provider cannot be the Tracking Entities, because they are not providing the "service" it is providing the trap and trace device – two different pieces of technology contemplated by the plain language.

Plaintiff and Putative Class Members are "users" of this "service."[3] And the Tracking Software are "trap and trace devices." Defendant (aka the "provider") failed to obtain "consent of the user of that service" prior to "install[ing] or us[ing]" the pixel (aka the "trap and trace device") on the website (aka the "electronic or wire communication service"). Defendant's Motion seemingly misconstrues the allegations; the trap and trace device is installed by Defendant on Defendant's Website, not on Plaintiff's device.

In *Moody*, the Central District of California was analyzing the exact same software at issue in this case. 742 F.Supp.3d at 1076. The defendant sought dismissal, in part, based on the argument that the TikTok pixel software was not a trap and trace device because it is embedded in a website and not attached to a telephone line. *Id.* The court, there, disagreed stating that tracking software embedded in a website constitutes a "process that record[s] or capture[s] certain information from a wire or electronic communication." *Id.* (quotation modified). Thus, the TikTok pixel qualifies as a trap and trace device prohibited under CIPA. *Id.*

This case is no different than *Moody*, as it involves the <u>exact same software</u>. Plaintiff alleges that Defendant utilizes the Tracking Tools, including the TikTok Pixel, to gather data on and identify website users. FAC ¶¶ 39–43, 48, 59–70. As was the case in *Moody*, Plaintiff alleges that the Tracking Tools collect the IP address of the user's device, the user's device user-agent strings, the make and model of the user's device, the type of operating system the user's device utilizes, what browser the user is utilizing, and the unique browser ID for the user's web browser in an effort to fingerprint Plaintiff and identify her. FAC ¶¶ 41, 68, 124, 162. Thus, just like in *Moody*, the Tracking Tools are processes that record or capture information from a wire or electronic communication within the meaning of CIPA, and are therefore trap and trace devices. *Moody*, 742 F.Supp.3d at 1076. Numerous other courts have come to the exact same conclusion. *See, e.g.*, *Rodriguez*, 762 F.Supp.3d at 929–30; *Lesh*, 2025 WL 563358, at *3; *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *3–4 (N.D. Cal.

[3] Obviously Class Members must be the users, because it is their data, and therefore their privacy which is being invaded secretly by the provider (Defendant) on its website (service) using the Pixel (trap and trace device).

Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928 (N.D. Cal. 2024). One court recently noted that the case law "uniformly" supports the conclusion that online tracking software like the TikTok pixel is a trap and trace device. *Bradshaw v. Lowe's Companies, Inc.*, No. 25cv0742, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) (collecting cases).

This should not be surprising given the broad language utilized by the Legislature in Penal Code § 638.50, and the Legislature's stated codified intention under § 630 to adopt technological application of CIPA to evolving times. Under the plain language of CIPA all that is required to be a trap and trace device is the Tracking Tools utilize a process to collect electronic impulses that identify the source of an electronic communication. The robust software utilized here, which collects electronic impulses sent from a website user's computer <u>for the primary purpose of identifying that user,</u> undoubtedly qualifies.

The subsequent history of CIPA also suggests that the Tracking Tools meet the definition of a trap and trace device. "[A] subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." *Cal. Emp. Stabilization Comm. v. Payne* (1947) 31 Cal.2d 210, 213–214. Currently pending in the Legislature is Senate Bill 690, which would amend CIPA to exempt the "processing of personal information for a commercial business purpose," from civil liability. S.B. 690, 2025 S., Reg. Sess. (Cal. 2025). But if Defendant is correct that the Tracking Tools are not trap and trace devices, then why would the Legislature need to amend CIPA to exempt this software from coverage? The simple answer is that software like the Tracking Tools are trap and trace devices, as that term is currently defined by CIPA, under a plain language analysis and according to case law that is directly on point.

**2. The Tracking Tools do not collect the contents of a communication.**

Generally, "contents" in the context of a privacy statute means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')," and "does not include record information" such as the name, address, and identity of the sender. *In re Zynga Priv. Litig.*, 750 F.Supp.3d 1098, 1106–07 (9th Cir. 2014). Courts have repeatedly held that IP addresses and other identifiers collected by the Tracking Tools are not "contents." *See, e.g.*, *Deivaprakash v. Conde Nast*

*Digital*, 798 F.Supp.3d 1100, 1105 (N.D. Cal. 2025); *Mirmalek v. Los Angeles Tims Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Here, Plaintiff alleges that the Tracking Tools collects a user's IP address, device identifiers such as user-agent strings, make and model, operating system type, and unique browser ID and then use that information to link to other identifying information (such as emails). *See* FAC ¶¶ 41, 68, 124, 162. These are not the contents of a communication.

Defendant's citation to *Price v. Headspace, Inc.*, is inappropriate. No. 24STCV1237977, 2025 WL 1237977 (Cal. Sup. Ct. Apr. 1, 2025). There, the California Superior Court held that allegations that the tracking software sent "images of website user's interests in Defendant's services," to TikTok. *Id.* at *3. The Court emphasized that while many of the allegations the plaintiff included addressed the "'who,' 'when,' and 'where' of communications . . . there is no liberal construction of TikTok sending 'images' that does not amount to capturing the contents of the communications." *Id.* In this case, however, no such allegation regarding the sending of images by the Tracking Tools. They collect routing and addressing information only. *Price* is inapplicable.[4] Moreover, numerous courts have held that even where a trap and trace device might <u>also</u> capture the contents of a communication it is still a trap and trace device. *See, e.g.*, *In re Metal Pixel Tax Filing Cases*, 2025 WL 2243615, at *5 (N.D. Cal. Aug. 5, 2025); *Drummer v. Costar*

---

[4] *Price* is also an unpublished trial court order which, under California law, has no precedential value. *See* Cal. R. Ct. 8.1115. A slew of recent Superior Court orders support Plaintiff's position. *See Carreiro v. EHM Productions, Inc.*, No. 24STCV12462 (Cal. Super. Ct. L.A. Cty. Dec. 11, 2024) (Pl.'s Req. for Judicial Notice ("RJN"), Ex. A); *Heiting v. Taylor Fresh Foods, Inc.*, No. 24STCV12891, 2024 WL 3833296, at * 3–5 (Cal. Super. Ct. L.A. Cty. July 31, 2024); *Jurdi v. MSC Cruises (USA) LLC*, No. 24STCV14098, (Cal. Super. Ct. L.A. Cty. Sept. 17, 2024) (RJN Ex. B); *Heiting v. IHOP Restaurants, LLC*, No. 24STCV14453 (Cal. Super. Ct. L.A. Cty. Oct. 28, 2024) (RJN Ex. C); *Price v. Entravision Commc'ns Corp.*, No. 24SMCV02630 (Cal. Super Ct. L.A. Cty. Nov. 21, 2024) (RJN Ex. D); *Huff v. Silson Sporting Goods Co.*, No. 24STCV13922 (Cal. Super. Ct. L.A. Cty. Dec. 17, 2024) (RJN Ex. E); *Casillas v. Lucky Opco LLC*, No. 25STCV03961, 2026 WL 561536 (Cal. Super. Ct. L.A. Cty. Jan. 5, 2026); *Sanchez v. Cultures for Health, LLC*, No. 25STCV04175 (Cal. Super. Ct. L.A. Cty. Jan. 15, 2026) (RJN Ex. F).

*Grp., Inc.*, 2025 WL 3190656, at *5; *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025).[5]

Nor does Defendant's argument that Plaintiff has not alleged the collection of data reasonably likely to identify him have any merit. The data alleged to be collected—IP addresses, device user-agent strings, device make and model, operating system type, browser type, and browser ID—is "reasonably likely" to identify a website user when they are collected by software that has the ability to match that data to existing database entries. As alleged in the FAC, the Tracking Tools use this data to scan a database for matching data that can be used to identify the user. It is precisely because the Tracking Tools enable advertisers to decode this data that the Tracking Tools qualify as trap and trace devices.

**3. Defendant's claimed exemption clearly does not apply.**

Defendant alternatively argues that it is exempted from the trap and trace provisions because the use of the TikTok pixel is "necessary to operate the website." *See* Def.'s Dem. at 14. But Plaintiff affirmatively alleges that this is not true. *See* FAC at ¶¶ 45, 56–57. ("the TikTok software serves essentially two main purposes: identifying visitors to a website and then tracking their activity across that website."). There is no basis for the Court to conclude, at this stage, that the TikTok pixel is necessary for Defendant's website to function. Certainly, Plaintiff "does not allege that [defendant] violated CIPA simply by receiving IP addresses as part of an ordinary online exchange. Rather, the [FAC] alleges that [Defendant] affirmatively embedded third-party trackers that recorded and transmitted the users identifying information to outside entities for profiling and advertising purposes."

---

[5] These cases also address Defendant's argument that Plaintiff's claims under § 638.51 cannot coexist with his claims under § 631. The Tracking Tools are ultimately made up of multiple discrete pieces of software that perform unique functions. Many of those functions are intended to capture the incoming addressing and routing information as described in paragraph41, 68, 124, and 162 of the Amended Complaint. Others collect certain information that is submitted by the user to the website, like URLs. *See* FAC ¶¶ 43, 160, 182–184. Each of these discrete functions, which are described in the Amended Complaint, violate CIPA in different ways. Defendant's argument is essentially that if it employs software that violates multiple provisions of CIPA simultaneously it cannot be held liable for violating CIPA. That is nonsensical.

*Fergosa*, 2025 WL 2886399, at *7.[6] The TikTok pixel is not necessary and Defendant's Motion should be overruled.

**B. Plaintiff's claims under Penal Code § 631 are plead in the alternative to her claims under Penal Code § 638.51.**

Technology sometimes walks and chews gum at the same time, because software programs can be programmed to contain multiple different modules which each invade privacy in different ways. Penal Code § 631 covers "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal.3d 187, 192 (1978). Specifically prohibited are (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal C. § 631(a). CIPA also imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons" in violating the three clauses above. *Id.*

**1. The Tracking Tools intercept communications while they are in transit because they immediately intercept communications in real time.**

For purposes of CIPA a communication is intercepted in transit when it is "acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts have held that "at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured." *Esparza v. Kohl's*, 723 F.Supp.3d 934, 943 (S.D. Cal. 2024); *see also In re Vizio, Inc. Consumer Priv. Litig.,* 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) ("*Vizio*").

Plaintiff has clearly alleged that Tracking Entities intercepted his communications while they were in transit. *See* FAC ¶¶ 184–185, 209. The communications are therefore intercepted while they are in transit. *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) ("the [FAC's] allegation that a user's messages were intercepted in transit is to be taken as true" at the motion to dismiss stage); *see also India Price v.*

---

[6] Defendant utterly fails to explain how using tracking software for purposes of targeted advertising is necessary for its ecommerce website to function in the first place. This is because it simply is not necessary. Defendant's website would work perfectly fine if it chose to uninstall the TikTok pixel.

*Carnival Corp.*, 712 F.Supp.3d 1347, 1359–60 (S.D. Cal. 2024); *Ahringer v. LoanDepot, Inc.,* 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024).

### 2. Plaintiff alleges that the contents of communications were captured.

"'Contents' refers to the 'intended message conveyed by the communication.'" *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 795 (N.D. Cal. Dec. 2022). "A URL disclosing a 'search term or similar communication made by the user' 'could constitute a communication," under CIPA. *Id.* (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098k, 1106 (9th Cir. 2014). This is exactly the type of contents that Plaintiff alleges Defendants allowed the Tracking Entities to intercept: "Request URLs that include the names of the products users browse and/or purchase." FAC ¶¶ 183, 187. Defendant's argument to the contrary is belied by the FAC.

### 3. Plaintiff sufficiently alleges that the Tracking Entities' conduct was intentional.

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "A person acts purposefully when he 'consciously desires' a particular result." *Borden v. U.S.*, 593 U.S. 420, 426 (2021). In California, "[a] defendant need not have 'specific intent to cause injury or a subjective awareness of the risk that an injury might occur'" to have acted intentionally. *U.S. v. Gomez*, 165 F.4th 1199, 1209 (9th Cir. 2026) (quoting *People v. Williams*, 26 Cal.4th 779, 790 (2001)).

Penal Code § 631 applies to "[a]ny person who . . . willfully **<u>and</u>** without the consent of all parties to the communication ," engages in intentional wiretapping, attempts to learn the contents of a communication in transit, or uses information gained in violation of the statute. Cal. Penal Code § 631(a) (emphasis added). It only requires that a person intend to intercept communications, not have the specific intent to do so without a person's consent. *See James v. Walt Disney Co.*, 701 F.Supp.3d 942, 954 (N.D. Cal. 2023) ("there must have been intent . . . [to] intercept," but whether website users consented to that interception is a question of fact); *see also People v. Davies*, No. F080824, 2022 WL 366859, at *10 (Cal. App. Feb. 8, 2022) (analogous language of Penal Code § 632 is a

general intent crime that "requires no further mental state beyond willing commission of the act.").

There are a slew of allegations in the FAC from which the Court can reasonably infer that Tracking Entities intended to intercept the data at issue in this case. For example, "TikTok benefits . . by using data collected by the TikTok Pixel to improve their own products and services." FAC ¶ 46. And "Facebook independently benefits from the data collected through the Facebook Pixel by using the harvested data to sell targeted advertising services." FAC ¶ 91. Certainly, the entire purpose of the Tracking Tools is to enable the Tracking Entities to gather data on consumers for the purpose of targeted advertising—they axiomatically must have intended to capture this data or else the Tracking Tools would have no purpose. *See* FAC at p. 1. The Tracking Entities intended to capture the data at issue, nothing else is required. *See Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025). *James*, 701 F.Supp.3d at 954.

Defendant's cited authority to the contrary is easily distinguishable. In *B.K. v. Desert Care Network*, the plaintiff's complaint included numerous allegations mentioning the third party's "express desire not to receive health data from its business partners." No. , 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024). Thus, the court concluded the plaintiff's allegations "indicate that [the third party] either had no intention of receiving the data at issue or had some alternative *mens rea*." *Id.* Here, however, no such allegations appear in Plaintiff's FAC. While some of the Tracking Tools' user agreements generally require Defendant to comply with the law in using those tools, those agreements do not express the Tracking Entities' "express desire" not to receive the intercepted data for purposes of marketing. Again, that is the entire purpose of these Tools. Defendant's Motion should be denied.

**4. Defendant aided the Tracking Entities in the above-described violations of Section 631.**

Section 631 imposes liability on anyone who aids another in violating its three primary clauses. Cal. Penal C. § 631(a). "[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third

party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong)." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897–98 (N.D. Cal. 2023) (emphasis added). "Civil aider-and-abettor liability requires 'the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act **or** (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609, 2025 WL 948060, at *9 (Mar. 28, 2025) (quoting *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325–26 (1996)) (emphasis added).

Courts have repeatedly held that intentionally installing tracking software on a website is sufficient to establish aiding and abetting liability under CIPA. *See, e.g.*, *M.H. v. Done Global Inc.*, No. , 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025); *Doe v. Call-On DOC, Inc.*, No. 24CV2095, 2025 WL 1677632, at *12–15 (S.D. Cal. June 13, 2025); *R.C.*, 2025 WL 948060, at *8–9 (applying aider-and-abettor liability to Penal Code § 632 claim). Plaintiff alleges that Defendant "has installed on [its] Website software created by third-party social media companies," and that Defendant "aided, agreed with, conspired with, and employed the Tracking Entities to implement the Tracking Tools." *See* FAC ¶¶ 31, 211. In other words, the only reason the Tracking Entities were able to intercept anything at all is because Defendant installed their software on its website. That is "substantial assistance," such that Defendant is liable for aiding the Tracking Entities.

Defendant's argument that Plaintiff has not adequately plead that it aided and abetted the Tracking Entities is based entirely on the basis that he has not adequately plead Defendant's knowledge of the Tracking Entites' conduct. This argument is foreclosed by the Rules of Civil Procedure: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Thus, the "ninth Circuit has interpreted these rules to mean that conclusory pleading is sufficient," for mental states and knowledge. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (collecting cases). Plaintiff has adequately alleged that Defendant knew what the Tracking Entities were doing. *See* FAC ¶¶ 50–55, 94–100, 114–

117, 136–139. Defendant's argument is simply belied by the allegations in the FAC. Plaintiff's allegations are sufficient at this stage and Defendant's Motion should be denied.

**C. Defendant's First Amendment challenge is meritless.**

Prohibiting a third party tracking company from placing an invidious tracking and eavesdropping device on one's website is not protected speech. First of all, the statute is content neutral, and does not target any particular form of speech, meaning that a low level of scrutiny would apply (such as rational basis or intermediate scrutiny) even if that were the case. Clearly protecting consumer privacy provides a compelling governmental interest, especially since California's enshrined the Right to Privacy in Article 1 of the State Constitution. Moreover, Defendant fails to establish how the requisite statutory requirements of permitting such content neutral compelling governmental interest is not narrowly tailored by permitting such conduct with the minimally challenging requirement that Defendant simply tell people it is doing this before proceeding, i.e. by obtaining consent. Defendant's half baked First Amendment challenge does not appear at first blush to be serious.

The Ninth Circuit has reviewed First Amendment challenges to time place and manner restrictions of consumer privacy statutes before in *Moser v. F.C.C.*, 46 F.3d 970 (9th Cir. 1995). The Ninth Circuit analyzed a challenge to Section B of the Telephone Consumer Protection Act, a consumer privacy statute regulating telephone calls placed by companies using technology that Congress found to be invidious, unless the company had the consumer's prior express consent. The Ninth Circuit observed that the restrictions on commercial speech were content neutral time place and manner restrictions, i.e. that they regulated all telephonic speech, and had no content-based restriction.[7] Accordingly, there was no basis to challenge the restriction of commercial privacy invasions of consumers under the First Amendment, because all businesses were regulated equally.

---

[7] The TCPA was later amended and added a content-based restriction in 2015, which led to a series of cases litigated in part by undersigned counsel where the Supreme Court upheld the TCPA but severed the amendment to prevent a Fist Amendment challenge. *See Barr v. American Association of Political Consultants, Inc.*, 591 U.S. 610 (2020). *Moser* remains the applicable binding standard for purposes of this motion in light of the lack of a content-based restriction.

> The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided that the restrictions "are justified without reference to the content of the restricted speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (quoting Clark v. Community for Creative Non–Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).

*Id.* at 974. The restriction in *Moser* was that companies needed to obtain a consumer's consent before using an automatic telephone dialing system or artificial or prerecorded voice to contact them on their cellular telephone. There was no restriction that targeted any particular type of speech all speech was prohibited by this same regulation.

Like the TCPA in *Moser*, CIPA is content neutral by its plain language, and is simply imposing time place and manner restrictions. CIPA, like the TCPA, requires a consumer's consent. CIPA, like the TCPA, restricts the use of certain technology that would either track, collect data from, monitor, or eavesdrop upon a consumer's device. CIPA, like the TCPA, is content neutral. This is a time place and manner restriction. *Moser* is on all four legs here, and the First Amendment is simply not implicated.

To invalidate CIPA, Defendant bears the burden of demonstrating "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections." *Hersh v. United* States, 553 F.3d 743, 762 (5th Cir. 2008)[8]; *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (facial invalidation is "strong medicine" that should be employed "sparingly and only as a last resort"). Courts have consistently upheld the constitutionality of state's privacy laws. *See, e.g., Boelter v. Advance Magazine Publrs. Inc*., 210 F. Supp. 3d 579, 602 (S.D.N.Y. 2016); *Boehner v. McDermot*t, 484 F.3d 573, 578 (2007); *see also Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015). CIPA, in part, regulates commercial speech, and furthers a substantial government interest in protecting consumers' privacy.

However, Defendant does not identify how *its speech* is affected at all by CIPA. Indeed, CIPA plainly allows parties to a communication to record the communication. *See*

[8] In the context of constitutional challenges, "[e]very statute is presumed to be constitutional." *Munn v. Illinois*, 94 U.S. 113, 123 (1876).

*Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Cal. App. 1975). Defendant does not address that *its* recording capabilities are not hindered, and *its* speech is not at issue. Instead, Defendant's use of the Tracking Tools allowed Tracking Entities to copy Plaintiff's communications with the Website at the instant they were submitted to Defendant, and compelled Plaintiff's browser to send those duplicates to the Tracking Entities. Defendant essentially requests First Amendment protection for Plaintiff's speech which it helps to compel. Even if Defendant could raise a First Amendment claim, restrictions of commercial speech prompt an intermediate scrutiny analysis. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n. of N.Y.*, 447 U.S. 557, 564-66 (1980) (four-prong test). The speech (i) must concern lawful activity and not be misleading; and (ii) assert substantial governmental interest. Only after both factors are considered, courts will then (iii) "determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.'"[9] Finally, intermediate scrutiny (iv) "requires 'a fit between the legislature's ends and the means chosen to accomplish those ends'" where that means is reasonable and narrowly tailored to accomplish the desired goal. *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477, 480 (1989) (citations and internal quotation marks omitted)).

Defendant effectively concedes that the purpose of CIPA is to protect the privacy of consumers. *See* Def.'s Mot. to Dismiss at 27. Defendant's argument that CIPA does not advance this purpose can effectively be boiled down to an argument that Plaintiff has not adequately pled a violation of CIPA. In other words, Defendant takes the position that if the conduct alleged in the FAC is violative of CIPA, then CIPA is overly broad in violation of the First Amendment because it outlaws conduct that is not violative of CIPA. The argument is nonsensical. As discussed at length above, Plaintiff has adequately pled violations of CIPA.

Prohibiting third parties from tracking consumers' online activity undoubtedly advances the purpose of protecting the privacy of consumers. Certainly, as Justice

---

[9] *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2017) (citing *Central Hudson*, 447 U.S. at 566 (internal citations omitted)).

Sotomayor stated, allowing the large aggregation of data permits "an intimate window into a person's life, revealing not only his particular movements but through them his 'familial, political, professional, religious, and sexual associations." *U.S. v. Jones*, 565 U.S. 400, 415 (Sotomayor, J., concurring). Requiring Defendant to obtain consent before procuring Tracking Entities to engage in this conduct undoubtedly advances consumers' right to privacy.

The third prong of intermediate scrutiny considers "the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Boelter*, 192 F. Supp. 3d at 449 (citation omitted). "[A] fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Fla. Bar v. Went For It*, 515 U.S. 618, 632 (1995) (citation omitted).

CIPA prevents only the non-consensual capture and interception of addressing and routing information and communications, respectively. If Defendant wishes to track and share subscribers' information, they can do so by seeking consumers' consent or recording the information themselves. But, as discussed, Defendant chose to procure Tracking Entities to track consumers without consent. Defendants' decision not to seek Plaintiffs' consent, in any form, and to ignore or purposely avoid using tools that would allow it to track and share through the Pixel, does not render CIPA unconstitutional. Defendant's Motion should be denied.

**D. The rule of lenity does not apply.**

"[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." *People v. Avery* (2002) 27 Cal. 4th 49, 58. "In other words, 'the rule of lenity is a tie-breaking principle, of relevance when ' 'two reasonable interpretations of the same provision stand in relative equipoise ....' ' ' " *People v. Braden* (2023) 14 Cal. 5th 791, 824. A defendant in a case before the California Supreme Court argued recently by undersigned counsel invoked the rule of lenity to argue that any ambiguities should be interpreted in its favor. *See LoanMe*, 11 Cal.5th at 202. There, the

California Supreme Court declined to apply the rule of lenity, stating "the legislative history, the purpose of the statute, general public policy concerns, and logic all favor the interpretation we adopt," and therefore CIPA was not so ambiguous as to justify applying the rule of lenity. *Id.* This is exactly the case here. The Court can do far more than "guess" what the Legislature intended—the plain language of the statute is sufficiently clear. The parties' positions are not in "relative equipoise." Courts have repeatedly declined to apply the rule of lenity to CIPA's trap and trace provisions. *See, e.g.*, *Deivaprakash*, 798 F.Supp.3d at 1108–09; *Fregosa*, No. 25-cv-01094, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025). Defendant's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion be denied.

Dated: May 15, 2026

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: /s/Todd M. Friedman
Adrian R. Bacon
Todd M. Friedman
Matthew R. Snyder
Attorneys for Plaintiff

**LOCAL RULE 11-6.1 COMPLIANCE CERTIFICATION**

The undersigned, counsel of record for Plaintiff Joseph Limas, certifies that Plaintiff's brief in Opposition to Defendant's First Amended Complaint contains 6,896 words, which complies with the word limit of Local Rule 11-6.1.

Dated: May 15, 2026

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: /s/Todd M. Friedman
Adrian R. Bacon
Todd M. Friedman
Matthew R. Snyder
Attorneys for Plaintiff

## **PROOF OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years and not a party to the above-entitled cause. On May 15, 2026, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF on the interested parties in said case:

[x] ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Executed on May 15, 2026, at Calabasas, California.

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: s/ Todd M. Friedman
Todd M. Friedman