UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 25-11185-DMG (Ex)** | Date | August 13, 2026 |
| Title | ***Joseph Limas v. Wayfair LLC, et al.*** | Page | 1 of 14 |

Present: The Honorable DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| DEREK DAVIS | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [26]**

Plaintiff Joseph Limas brings this action individually and on behalf of all California residents against Defendant Wayfair LLC ("Wayfair") raising claims under California's Invasion of Privacy Act ("CIPA"). [Doc # 22 (First Amended Complaint ("FAC"))]. Before the Court is Defendant's motion to dismiss the FAC. [Doc. # 26-1 ("MTD").] The motion is fully briefed. [Doc. ## 27 ("Opp."), 29 ("Reply").] For the reasons set forth below, the Court **DENIES in part** and **GRANTS in part** the motion to dismiss.

## I.
## FACTUAL BACKGROUND[1]

Plaintiff sues on behalf of all California residents who have visited Wayfair's website, https://www.wayfair.com ("the Website"). FAC at ¶ 4. Defendant is in the business of selling furniture, home decor, appliances, and other home goods. *Id.* at ¶ 5. Plaintiff alleges Wayfair installed "Tracking Tools", or pixels, on behalf of the third-party social media companies TikTok, Facebook/Meta, Pinterest, Snapchat, Twitter/X, and Reddit (collectively "Tracking Entities"). *Id.* at ¶ 4. Plaintiff brings two causes of action: (1) violation of CIPA section 631(a); and (2) violation of CIPA section 638.51. *Id.* at ¶¶ 203–226. Plaintiff visited the Website to search for furniture, home decor, lighting fixtures, bedding & bath accessories, outdoor furniture, storage and organization products, and appliances. *Id.* at ¶ 4. He attests he is genuinely interested in the goods and services on the Website. *Id.* Plaintiff alleges the Tracking Tools capture and record both incoming and outgoing request data from Website users like himself. *Id.* at ¶ 30. The process generally involves user identification and tracking of the user's interactions with the Website for the purposes of enhanced advertising.

[1] The Court assumes the truth of the material allegations in the FAC solely for the purpose of deciding the MTD. Plaintiff requests the Court take judicial notice of state court orders on CIPA claims. [Doc. # 28 ("PRJN").] Court filings are matters of public record and are proper subjects of judicial notice, but the Court cannot "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Accordingly, the request for judicial notice is **GRANTED** with that limitation.

## A. User Identification

User identification occurs through small text files known as "cookies." *Id.* at ¶ 61. When an internet user accesses a social media website, the Tracking Entity[2] allegedly loads a cookie onto the user's browser. *Id.* at ¶ 62. If the user has an account with that social media entity, the cookie contains a unique generated ID number assigned to the user's social media account. *Id.* at ¶ 62, 66. That cookie is stored on the user's browser as the user accesses various websites. *Id.* at ¶ 63.

When a website like Wayfair's contains a Tracking Tool, that stored cookie will reload on the website. *Id.* at ¶ 64. Using the user or account ID contained in the cookie, the Tracking Tool attempts to match the information with data in its database. *Id.* at 64. Certain tools, like the TikTok and Reddit tools, allow for features such as "Advanced Matching," and "Auto Advanced Matching," both of which were enabled on the Website. *Id*. at ¶¶ 43, 159. These features can match customers more precisely using information such as an email or phone number. *Id.*

If a matching account is found, the Tracking Entity connects the Website user to the user's social media account. *Id.* at ¶¶ 37, 52 (TikTok), 78–85 (Facebook/Meta), 105–107 (Pinterest), 145 (Twitter/X), 149–163 (Reddit).[3] Even if an account is not found, Plaintiff alleges the Tracking Tool collects other metadata about the website user. This can include the user's IP address, device model, operating system type, and unique browser ID. *Id.* at ¶ 67. This metadata is sent to the Tracking Entity and logged into its database for future matching. *Id*. at ¶ 68. No privacy policy or cookie banner is presented to the user before this process occurs. *Id*. at ¶¶ 70 (TikTok), 81 (Facebook/Meta), 145 (Twitter/X), 160 (Reddit).

## B. Tracking of Interactions

Once a Website user like Plaintiff is identified, Plaintiff alleges the Tracking Tools collect Website interactions such as what website pages a user visits, what products are viewed and/or purchased, and what ads are clicked on. *Id.* at ¶¶ 71–72 (TikTok), 84–88 (Facebook/Meta), 122–124 (Snapchat), 141–144 (Twitter/X), 156–157 (Reddit). The parameters customized by Wayfair determine the quantity and specificity of the data. *Id.* at ¶ 32.

---

[2] Plaintiff alleges how each Tracking Tool (Tiktok, Facebook, Pinterest, Snapchat, Twitter/X, and Reddit) functions. *See* FAC at ¶¶ 35–171. Where the Tracking Tools meaningfully differ in their function and collection of data, the Court will delineate the differences between the Tracking Tools. The allegations otherwise generally apply across all Tracking Tools.

[3] All of the alleged Tracking Tools, with the exception of Snapchat, identify the user's social media account.

Generally, the information shared is used by the Tracking Entities for advertising and marketing purposes. *Id.* at ¶¶ 74 (TikTok), 82 (Facebook/Meta), 108–109 (Pinterest), 125–131 (Snapchat), 145–147 (Twitter/X), 164 (Reddit), 194. Plaintiff alleges Wayfair did not obtain his express or implied consent to the collection of his data. *Id.* at ¶ 178. Wayfair took affirmative steps to install the Tracking Tools onto the Website. *Id.* at ¶¶ 50 (TikTok), 77 (Facebook/Meta), 102 (Pinterest), 119 (Snapchat), 141 (Twitter/X), 156 (Reddit).

## II.
## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully[.]" *Id.* (quoting *Twombly*, 550 U.S. at 556). In conducting the above analysis, a court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.
## DISCUSSION

Plaintiff brings claims under two sections of CIPA. *See* Cal. Penal Code §§ 631(a), 638.51. Wayfair moves to dismiss these claims and argues that Plaintiff's proposed interpretation of CIPA violates the First Amendment. *See* U.S. Const. amend. I. The Court will address each in turn.

### A. Section 631(a)

Section 631(a) imposes liability for distinct and mutually independent patterns of conduct under separate clauses. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177 (N.D. Cal. 2024); *see Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978) *and Ribas v. Clark*, 38 Cal.3d 355, 360 (1985). The plaintiff must sufficiently allege that the defendant: "(1) engaged in intentional wiretapping; (2) willfully read 'the contents or meaning' of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024). Clause four of section 631(a)

specifically imposes liability on one who "aids, agrees with, employs, or conspires with any person or persons to unlawfully" violate any of the other three clauses. Cal. Penal Code § 631(a); *see also Gianne v. Accor Mgmt. U.S. Inc.,* No. CV 25-2425-DMG (Ex), 2026 WL 925522 at *2 (C.D. Cal. Mar. 31, 2026).

Parties to the communication are typically exempt from liability given that a party to a conversation cannot be liable for "eavesdropping" on one's own conversation. *Id.* at *3 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020)). While Wayfair is undisputedly a party to the conversation, the Tracking Entities are not. FAC at ¶ 186; *In re Facebook*, 956 F.3d at 608. Plaintiff alleges that the Tracking Entities violated clause two of section 631(a). *See* FAC at ¶ 209. The Court must therefore address whether clause two was violated and whether Wayfair aided, agreed with, employed, or conspired with the Tracking Entities under clause four.

**1. The Tracking Entities and Clause Two**

Under the second clause of section 631(a), the Tracking Entities must have attempted to read or to learn the contents of a communication. Cal. Penal Code § 631(a). This must be done willfully, while the same is "in transit[,]" and without consent of "all parties[.]" *Id.*; *Gianne,* 2026 WL 925522 at *3.

*a. Contents*

The contents of an online communication "refers to the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts have analogized this to the "distinction between the outside of an envelope and its contents[.]" *Id*. In *In re Facebook*, 956 F. 3d at 605, the Ninth Circuit found that URLs which included the exact subpage of precise items being purchased met the definition of "contents," since these full-string detailed URLs could "divulge a user's personal interests, queries, and habits[.]"

Plaintiff has shown the Tracking Entities gather information beyond mere record information. Here, most of the Tracking Tools connect the Website user to the user's social media account. A website user's social media account is more akin to the "compiled highly personalized profiles" in which the Ninth Circuit found plaintiffs had a reasonable expectation of privacy. *In re Facebook*, 956 F.3d at 604; *see also Gianne,* 2026 WL 925522 at *3.

According to Plaintiff's FAC, the Snapchat tool does not connect the Website user to a social media account. Instead, the tool collects the following information across multiple devices: (1) the time the website actions occurred, (2) device information such as the hardware model, operating system, and browser type used, (3) cookies, (4) metadata such as button clicks, time spent on the site, conversations, and page visits, and (5) IP addresses for general geographic data. *See* FAC at ¶ 124. The Ninth Circuit has ruled that users do not maintain a reasonable expectation of privacy in mere IP addresses. *See In re Facebook*, 956 F.3d at 604 (citing *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008)). IP addresses are distinguishable from URLs which may identify the particular document the website user viewed and "thus reveal[] much more information about the person's Internet activity." *Id.* Here, the Snapchat tool tracks the Website user's interest in and actions regarding specific products on the Website, connects that information across the user's multiple devices, and "matches" it with "existing data Snapchat has acquired and accumulated" from "millions" of users to improve advertising. FAC at ¶ 129. Plaintiff has therefore sufficiently alleged a user has a reasonable expectation of privacy in the information the Snapchat tool collects.

Wayfair argues Plaintiff's claim fails because he does not allege what specific queries Plaintiff himself inputted on the Website and what content was returned as a result. *See* MTD at 14[4] (citing *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. CV 24-01119-DC (CKDx), 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) and *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023)). In the FAC, Plaintiff alleges he "recently" used the Website to search for furniture, home decor, lighting fixtures, bedding & bath accessories, outdoor furniture, storage and organization products, and appliances. FAC at ¶ 4. In accessing the Website, he used the same devices and browser he uses to access TikTok, Facebook, Pinterest, Snapchat, Twitter, and Reddit. *Id.* The FAC walks through each Tracking Tool in detail and provides pictures of sample Website webpages and the tool's code on the Website. *See, e.g.* FAC at ¶ 48. At this stage of the case, these allegations are sufficient to show how each Tracking Tool functioned and collected Plaintiff's data when he recently browsed the Website. *Accord Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 867 (N.D. Cal. 2026) (rejecting defendant's argument that plaintiffs had to allege "*which* specific URLs" they visited).

*b. Same and In-Transit Communications*

Wayfair argues Plaintiff fails to allege the intercepted communications were the "same" ones originally transmitted. Clauses one and two of section 631(a) refer to the tapping or reading

[4] All page citations herein refer to the page numbers inserted by the CM/ECF system.

of "any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."

Wayfair asserts that if a message is encrypted it is not the "same" communication and it was not intercepted while it was "in transit." MTD at 13. Wayfair cites unreported[5] district court cases to support this novel reading of section 631. For example, in *Briskin*, the district court did not provide much analysis—it simply "agree[d] with defendants" and granted the motion to dismiss with leave to amend. *Briskin v. Shopify Inc.*, No. CV 21-06269-PJH, 2026 WL 161441, at *7 (N.D. Cal. Jan. 21, 2026)). Moreover, it is unclear if the information here is encrypted. The FAC does not allege the information is encrypted outside of the Facebook Tool, which *may* but does not necessarily encrypt information. *See* FAC at ¶ 97.

Even if the information is encrypted, Wayfair's argument is not persuasive. The Court looks first to the plain meaning of the words in the statute. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 650 (9th Cir. 2016). A plain reading of section 631(a)'s language reveals the word "same" is used to refer the reader to a previous list of modes of communication. Specifically, section 631(a) lists "any message, report, or communication while the *same* is in transit." Rather than require the "message, report, or communication" remain the "same" throughout transit, section 631(a) uses the word "same" to avoid repetition.

Allegations showing that duplicates of communications were simultaneously transmitted in real-time adequately demonstrate that messages were intercepted while "in transit." *See Gianne,* 2026 WL 925522 at *3 (citing *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023)). Here, Plaintiff alleges the contents of his communications were intercepted in "real time" as soon as the Tracking Tool loaded onto his browser. FAC at ¶ 184. The information is sent "contemporaneously" with the user's interaction with the browser. *Id.* at ¶ 185. The "interception, duplication" and delivery of the information to the Tracking Entities occurs before the information reaches Wayfair. *Id.* Plaintiff explains how each Tracking Tool intercepts information, what information it intercepts, what code is employed, and at what point the information is intercepted. *See id.* at ¶¶ 35–171.

Unlike the plaintiffs' allegations in the cases Wayfair relies upon, Plaintiff's allegations are neither threadbare nor conclusory. *See* MTD at 13 (citing *Licea v. Cinmar, LLC*, 659 F. Supp.

[5] Wayfair cites to one reported case, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), as an example of a court that granted dismissal on this ground. The district court in *Smith* analyzed whether embedded code constituted actions that subjected a defendant to the personal jurisdiction of the court. It did not find encrypted communications as a general matter fail to constitute "same" or "in transit" communications under CIPA.

3d 1096, 1110 (C.D. Cal. 2023) (dismissing a CIPA claim with leave to amend because plaintiff alleged, without more, that the "messages were 'intercepted in real time'"); *L.B. v. LinkedIn Corp.*, No. CV 24-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (same)). Nor does Plaintiff allege the duplication is non-contemporaneous or disconnected from the information. *See* MTD at 13 (citing *Barbour v. John Muir Health*, No. CV 22-01693, 2023 WL 2618967, at *2 (Cal. Super. Jan. 05, 2023) (finding data was not intercepted in transit where it was not duplicated contemporaneously); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (finding complaint did not allege how the tool functions as related to the communications); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding an "intercepted" communication under CIPA is acquired during transmission and not while it is in storage). Plaintiff's allegations are sufficient to demonstrate that information was intercepted in transit.

*c. Willfulness and Consent*

Section 631(a) applies to any person who "willfully and without the consent of all parties to the communications" engages in a violation of the section. Cal. Penal Code § 631(a). Wayfair argues Plaintiff has not pled any facts as to the Tracking Entities' willful behavior. On the contrary, Plaintiff alleges how each Tracking Tool intercepts data and how each Tracking Entity uses the harvested data to improve advertising. This behavior is intentional. *Accord Gianne,* 2026 WL 925522 at *3.

As for consent, the FAC is devoid of any allegations of a banner or similar website contract that could suggest the Tracking Entities gained Plaintiff's consent.[6] Wayfair argues that Plaintiff must plead facts to suggest the Tracking Entities "knew or should have known" the data it received was collected without Plaintiff's consent. MTD at 15. This imputes a knowledge requirement not found in the plain language of section 631 or in any case authority binding upon this Court. *See id.* Moreover, consent is unlikely as Plaintiff alleges he gave no prior consent and no privacy policy or cookie banner is presented to the Website user before some of the Tracking Tools collect data. *See, e.g.,* FAC at ¶¶ 70 (TikTok), 81 (Facebook/Meta), 145 (Twitter/X), 160 (Reddit), 176, 178, 189, 209, 213.

[6] Wayfair argues the Website contains a privacy policy that is "in line with common usage and reasonably conspicuous with contrasting font." MTD at 28–29. This purported privacy policy is not alleged in the FAC. Ordinarily, a Court may only look to the face of the complaint in deciding a Rule 12(b)(6) motion. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). The Court may also consider evidence "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity[.]" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Although the Court has considered similar evidence based upon this doctrine in the past, Wayfair has not provided authenticated evidence of the Website's alleged privacy policy outside of its conclusory statement in its brief. *See Gianne*, 2026 WL 925522 at *4.

**2. Wayfair and Clause Four**

Pursuant to clause four of section 631(a), Plaintiff alleges Wayfair aid[ed], agree[d] with, employ[ed], or conspire[d]" with the Tracking Entities in their violation of clause two. Cal. Penal Code § 631(a). This Court imposes a scienter requirement upon clause four. *See Gianne,* 2026 WL 925522 at *6; *Valenzuela v. Kroger Co.*, No. 22-CV-6382-DMG (AGRx), 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024).

The common law definition of scienter applies in California civil actions when it is not explicitly stated in the statute. *Valenzuela*, 2024 WL 1336959, at *4. "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996) (citing *Saunders v. Sup. Ct.*, 27 Cal. App. 4th 832, 846 (1994) and Rest. 2d Torts, § 876). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Id.*

Plaintiff alleges Wayfair purposefully installed the Tracking Tools on its website and knew the Tracking Tools would intercept the Website users' information "invisibly" and "surreptitiously[.]" FAC at ¶ 31. Plaintiff explains how Wayfair was required to take affirmative steps to install the Tracking Tools onto the Website. *Id.* at ¶¶ 50 (TikTok), 77 (Facebook/Meta), 102 (Pinterest), 119 (Snapchat), 141 (Twitter/X), 156 (Reddit). Furthermore, some of the Tracking Tools provide Wayfair with the ability to customize what information is collected. *Id.* at ¶ 43. Each Tracking Tool requires the website owner to agree to terms that include a shared understanding of the tool's data gathering functions. *Id.* at ¶¶ 41 (TikTok), 95 (Facebook/Meta), 114 (Pinterest), 126 (Snapchat), 149–150 (Twitter/X), 167–168 (Reddit). These allegations give rise to a plausible inference that Wayfair knew the tools constituted a breach of duty under section 631(a) through data harvesting and assisted or encouraged the conduct by installing the tools on the Website. *Accord Gianne,* 2026 WL 925522 at *6.

**B. Section 638.51**

Plaintiff claims Wayfair violated CIPA section 638.51, which prohibits the installation of a pen register or a trap and trace device without court order. Cal. Penal Code § 638.51(a). Plaintiff alleges the Tracking Tools are pen registers and/or trap and trace devices. *See* FAC at ¶¶ 172–178.

**1. Pen Register**

Wayfair argues Plaintiff fails to allege the Tracking Tools are pen registers. MTD at 16–17. In his Opposition, Plaintiff does not address Wayfair's challenge to his pen register claim. *See* Opp. at 11–16; Reply at 12–13. The Court therefore deems Plaintiff to have conceded that his pen register claim should be dismissed for the reasons stated in Wayfair's motion. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Accordingly, Plaintiff's pen register claim is **DISMISSED without leave to amend** due to waiver or abandonment.

**2. Trap and Trace Device**

Section 638.50 defines a trap and trace device as a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). The Ninth Circuit has not yet opined on trap and trace devices under section 638.50. Courts in this district and elsewhere have construed section 638.50's language to encompass software embedded on Websites akin to the Tracking Tools alleged here. *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025), *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024).

Wayfair argues that Plaintiff's trap and trace device claim fails because: (a) Plaintiff fails to allege any device or process that captures incoming impulses; (b) Plaintiff fails to allege impulses "reasonably likely to identify" Plaintiff; (c) Plaintiff also pleads the tools capture the contents of a communication; and (d) Wayfair is an exempt "electronic communication or wire service" provider. The Court will address each argument in turn.

*a. Incoming Electronic or Other Impulses*

A trap and trace device captures "incoming electronic or other impulses[.]" Cal. Penal Code § 638.50(c). Wayfair argues "incoming" impulses are those directed towards the plaintiff's device. *See* MTD at 17. This, according to Wayfair, is in contrast to pen registers which capture

outgoing impulses from a website user's device.[7] *Id.* But section 638.50(c) does not state the impulses must be sent *from* the Website to the Website user. The impulses as alleged here are those sent from the Website user to the Website. *See* FAC at ¶ 222 ("Defendant uses . . . trap and trace processes on its Website by deploying the Tracking Tools on its Website . . . . The Tracking Tools identify the source of the incoming electronic and wire communications to the Website."). These impulses are still "incoming" to the Website from the user while the Tracking Tools, which were installed by Wayfair, capture the applicable information. This makes logical sense, as Website users are the ones who have privacy interests in their identity and the Court must "interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002)). Bearing in mind CIPA's legislative purpose, the Court concludes that Plaintiff has adequately alleged that the Tracking Tools installed on the Website capture incoming impulses from the Website User.

*b. Reasonably Likely to Identify Information*

Wayfair asserts that the alleged incoming impulses are not "reasonably likely to identify the source of a wire or electronic communication[.]" Cal. Penal Code § 638.50(c). Logically, and as alleged here, the source who is concerned about the privacy of one's identity is the Website user. *See Flanagan*, 27 Cal. 4th 766.

Wayfair relies on the Third Circuit's opinion in *In Re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016), for the principle that an "IP address" or a "digital code in a cookie file" is insufficient to identify a person. *Id.* at 290. First, the Third Circuit analyzed a claim under the Video Privacy Protection Act,[8] not CIPA. Even if the Court follows the Third Circuit's reasoning, the alleged captured information here is more than an IP address or a digital cookie in a cookie file. Instead, Plaintiff has alleged how most of the Tracking Tools identify the Website user's applicable social media profile which indeed identifies a person. *See Hassid v. Alex and Ani, LLC,* 816 F. Supp. 3d 1196, 1199 (C.D. Cal. 2026) (finding the TikTok Tracking Tool, as alleged, is a trap and trace device). Even if the Website user does not have an applicable

[7] A pen register is defined as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

[8] The Video Privacy Protection Act "prohibits the disclosure of personally identifying information relating to viewers' consumption of video-related services." *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 267.

account, the Tracking Tool collects information beyond mere IP addresses.[9] *See Rodriguez*, 762 F. Supp. 3d at 930 (finding software that collects operating system information, browser information, geolocation data, and email addresses is a trap and trace device). As for Snapchat, although it does not link the Website user to a Snapchat profile, it connects the information collected across the user's devices and "matches" it with existing data—at this stage in the case, there is a plausible inference that this matching process is reasonably likely to identify the Website user.

*c. Contents of Communications*

A trap and trace device does not capture the "contents of a communication[.]" Cal. Penal Code § 638.50(c). Wayfair therefore argues that because Plaintiff alleges the contents of communications are captured in his section 631(a) claim, Plaintiff cannot concurrently bring a claim under section 638.51. Plaintiff is permitted to plead claims in the alternative and asserts as much in the Opposition. Fed. R. Civ. P. 8(d)(3); Opp. at 17. Even so, Plaintiff's FAC does not plead the section 638.51 claim in the alternative and instead incorporates "foregoing" paragraphs in the FAC by reference. FAC at ¶ 215. *See In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 898 (N.D. Cal. 2026) (dismissing a section 638.51 claim for inconsistent allegations).

Even if the claims are not pled in the alternative, the Court is not convinced that the pleading of a section 631(a) claim *automatically* necessitates dismissal of a section 638.51 claim. Such an approach would not give greater protection to privacy interests. *See Flanagan*, 27 Cal. 4th at 775. Given the legislative purpose of CIPA, it is "highly unlikely that the Legislature intended to permit the installation and use of [trap and trace devices] so long as those devices also record the contents of a third party's communications." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025); *accord Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 872 (N.D. Cal. 2025). Such a loophole would allow any website operator to escape liability for trap and trace devices, or pen registers, by employing a more intrusive form of technology. *In re*

[9] The TikTok tool collects the time Website actions took place, IP address, device information including make, model, operating system, and browser information, cookies "that can be used to identify users," metadata, and button clicks. FAC at ¶¶ 41, 67. If "Advanced Matching" is enabled, these Website actions are matched with customer information "such as email and phone number." *Id.* at ¶ 41. The Facebook/Meta tool collects a tool specific Pixel ID which is cross referenced against a pre-determined library of code in Meta's system. *Id.* at ¶¶ 78, 79. The Facebook/Meta Pixel ID is used to pinpoint audience demographics by interests, gender, or location, thereby giving rise to a reasonable inference that it collects information related to those demographics. *Id.* at ¶ 83. The Pinterest tool collects tool specific ID and, if automatic enhanced match is enabled, the Website user's email, first and last name, phone number, gender, birth date, external IDs, and cities, states, zip codes, and countries. *Id.* at ¶¶ 106–107. The Reddit tool, if auto-advanced matching is enabled, collects email addresses, phone numbers, mobile advertising IDs, Reddit Click IDs, external IDs, Reddit UUIDs, User Agents, and the Website user's screen dimensions. *Id.* at ¶ 164.

*Meta Pixel Tax Filing* Cases, 793 F. Supp. 3d at 1154. Moreover, Plaintiff alleges the Tracking Tools identify Website users through several different processes. *See, e.g.*, FAC at ¶ 59. It is plausible that these processes could function separately, allowing Plaintiff to move forward with both CIPA claims.

*d. Electronic or Wire Communication Service Provider Exemption*

Section 638.51(b) provides a statutory exemption for certain uses of pen registers or trap and trace devices. A trap and trace device may be used by a "provider of electronic or wire communication service" for "any of the following purposes":

> (1) To operate, maintain, and test a wire or electronic communication service.
> (2) To protect the rights or property of the provider.
> (3) To protect users of the service from abuse of service or unlawful use of service.
> (4) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service.
> (5) If the consent of the user of that service has been obtained.

Cal. Penal Code § 638.51(b).

Wayfair argues it falls within this exemption. Wayfair claims it is a qualifying provider because it owns and operates a website. *See* MTD at 23. If the Court adopted this argument, however, it would mean all website owners qualify for the exemption. More is required to find Wayfair, an online furniture company, is engaged in the business of providing "electronic or wire communication service." Cal. Penal Code § 638.51(b); *accord Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 898 (S.D. Cal. 2025) (finding defendant, an online pharmacy company, failed to show it was a provider of electronic or wire communication service). Even if Wayfair did fit this description, it fails to explain how the Tracking Tools fall within any of the four qualifying purposes provided in the exemption. Rather, the FAC alleges the Tracking Tools all function for the purpose of improving product advertising. Wayfair's section 638.51(b) exemption argument therefore fails.

## C. Rule of Lenity and Canon Against Absurd Results

Generally, the rule of lenity requires that "ambiguity in a criminal statute" should be resolved in favor of the defendant, "giving the defendant the benefit of every reasonable doubt on

questions of interpretation." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021). Wayfair argues the rule of lenity applies generally to the interpretation of all of CIPA's terms for all of Plaintiff's claims. *See* MTD at 24. The rule of lenity, however, only applies "when two reasonable interpretations of the same provision stand in relative equipoise" and where "resolution of the statute's ambiguities in a convincing manner is impracticable." *Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025) (quoting *People v. Avery*, 27 Cal. 4th 49, 58 (2002)) (internal quotation marks and punctuation omitted). There must be "an egregious ambiguity and uncertainty to justify invoking the rule[.]" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) (quoting *People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886 (2022)).

Wayfair has not identified any specific, let alone egregious, ambiguities. Its argument therefore fails. *Accord Deivaprakash*, 798 F. Supp. 3d at 1107 (declining to apply the rule of lenity in a CIPA case where defendant has not identified ambiguities); *Riganian,* 791 F. Supp. 3d at 1094 (same).

Similarly, Wayfair contends that Plaintiff's interpretation of CIPA would impose too much liability and generate too much litigation, therefore violating the canon against absurd results. *See* MTD at 24–25. In essence, Wayfair asks the Court to apply this canon and rule in its favor for policy reasons. None of the cases Wayfair cites to applied the canon against absurd results to dismiss CIPA claims.[10] Wayfair cannot avoid liability simply by claiming too many websites are being sued. *See* MTD at 24. Moreover, Wayfair fails to consider the stopgaps the legislature enacted within CIPA. Sections 631(a) and 638.51(b) provide consent-based exceptions to liability. Section 638.51(b), as the Court addressed *supra*, provides an exemption for electronic or wire communication service providers. The Court therefore declines to dismiss Plaintiff's claims under the canon against absurd results.

//
//

[10] *See Ramos v. Gap, Inc.*, No. CV 23-04715-HSG, 2025 WL 2144837 at *9 (N.D. Cal. July 29, 2025) (remarking in the conclusion that the court expects more detailed assertions from counsel "given the expansive implications"); *Licea v. Hickory Farms LLC*, No. CV 23-26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (finding, without any mention of the canon against absurd results, the collection of IP addresses and nothing more does not plausibly allege a pen register); *Casillas v. BOP LLC*, No. CV 24-15581, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025) (same); *Levings, Jr. v. Open Text Corp.*, No. CV 24-05440, 2024 WL 5672082, at *4 (Cal. Super. Sep. 03, 2024) (finding the defendant was an exempt provider under section 638.52(b)); *Eggleston v. Reward Zone USA LLC*, No. CV 20-01027-SVW (KSx), 2022 WL 886094, at *5 (C.D. Cal. Jan. 28, 2022), *aff'd sub nom. Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023) (finding the plaintiff's interpretation of "voice" under the Telephone Consumer Protection Act would lead to "absurd results").

**D. First Amendment**

Finally, Wayfair argues Plaintiff's claims "fail" under the First Amendment. U.S. Const. amend. I. As a threshold matter, it is unclear what standing Wayfair has to bring a First Amendment challenge. Wayfair appears to characterize the protected speech at issue as the transmissions sent from the Website user to the Website. *See* MTD at 27 ("the Website-Visit Data is alleged to have been shared willingly by Plaintiff to a public internet site . . . ."). Plaintiff raises the issue of standing in its Opposition. *See* Opp. at 22–23 ("Defendant does not identify how *its speech* is affected at all by CIPA."). Wayfair claims its own speech is "constitutionally implicated" because the transmissions are "duplicates" of its speech. Reply at 24.

It is axiomatic that to have Article III standing, a plaintiff must allege an injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). The injury in fact must constitute an invasion of a legally protected interest. *Lujan*, 504 U.S. at 560–61. Even under the "relaxed standing analysis" applied to First Amendment claims, the plaintiff still "must show an actual or imminent injury to a legally protected interest." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).

Wayfair has not identified any legally protected interest *it holds*. The "duplicates" of the transmissions are still expressions by the Website user and Wayfair has no role in the duplication. To assert the dubious proposition that it has standing to bring a First Amendment challenge, Wayfair must specify that it engaged in protected expression. *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017). It has not done so. Plaintiff asserts that Wayfair's alleged culpability stems from its installation of Tracking Tools onto its Website. Installing software cannot reasonably constitute protected expression under the First Amendment.

## IV.
## CONCLUSION

In light of the foregoing, Wayfair's motion to dismiss is **GRANTED in part** as to Plaintiff's section 638.51 pen register claim which is **DISMISSED without leave to amend**. The remainder of Wayfair's motion to dismiss is **DENIED**. Wayfair shall file its Answer to the First Amended Complaint by **August 28, 2026**.

**IT IS SO ORDERED.**